STATE of Utah, Plaintiff and Appellee,

v.

Lisa DEHERRERA, Defendant
and Appellant.

No. 970229–CA.

Court of Appeals of Utah.

July 2, 1998.

Randall K. Spencer, Utah County Public Defender Ass'n, Provo, for Defendant-Appellant.

Jan Graham, Atty. Gen., and Kenneth A. Bronston, Asst. Atty. Gen., Criminal Appeals Div., Salt Lake City, for Plaintiff-Appellee.

Before WILKINS, Associate P.J., and BENCH and BILLINGS, JJ.

WILKINS, Associate Presiding Judge:

■ Defendant Lisa Deherrera appeals from a conviction for possession of methamphetamine, a third degree felony, in violation of Utah Code Ann. § 58–37–8(2)(a)(i) (Supp. 1998). Defendant argues the trial court erred by concluding the good faith exception to the exclusionary rule applied to admit evidence obtained in violation of the United States Constitution and a state statute during an administrative traffic checkpoint stop. We agree with defendant and conclude the good faith exception does not apply to the circumstances of this case. We therefore reverse the trial court's suppression ruling and remand for further proceedings.

## BACKGROUND

On June 15, 1992, the Utah County Attorney's Office submitted for approval to a Fourth Circuit Court judge a plan for conducting an administrative traffic checkpoint in Tibble Fork Canyon. That same day, the judge issued findings noting the conformity of the plan to the statutory requirements of section 77–23–104 of the Utah Code and an order authorizing the plan. *See* Utah Code Ann. § 77–23–104 (Supp.1992) (outlining statutory requirements for administrative traffic checkpoint).

Under the terms of the authorized plan, the traffic checkpoint was to run from 1:00 p.m. to 3:00 a.m. from June 15, 1992, to September 30, 1992. All traffic running east and west would be stopped. The officers conducting the stop would inspect license plates, registration certificates, insurance cards, and compliance with seatbelt and child restraint requirements. They also would ask drivers if the drivers had been drinking or were impaired by controlled substances. In addition, the plan authorized officers to "visibly inspect the operation of required lights and other required exterior safety devices" and to "inspect for other apparent criminal

activity." Ninety-six law enforcement officers, listed by name and position in the authorized plan, could participate in the traffic checkpoint.

On August 31, 1992, a Fourth Circuit Court judge authorized an amendment to the original Tibble Fork Canyon administrative traffic checkpoint plan. The amendment allowed the traffic checkpoint to continue running from September 1, 1992, to November 30, 1992, and added eight officers from the Department of Wildlife Resources to the previous roster of ninety-six officers.[1]

Additional amendments expanded the Tibble Fork Canyon traffic checkpoint plan and authorized it to continue for almost four years.[2] On December 2, 1992, another authorized amendment added seven Utah Highway Patrol officers to the checkpoint roster and allowed the checkpoint to continue running from December 1, 1992, to February 28, 1993. On May 26, 1993, a third amendment added three United States Forest Service Law Enforcement officers to the roster and allowed the checkpoint to run from June 1, 1993, to August 31, 1993. On July 7, 1994, a fourth amendment added seven new officers from various agencies to the roster and allowed the checkpoint to run from August 31, 1994, to August 31, 1995. The final amendment, authorized on May 26, 1995, again extended the checkpoint dates, allowing the checkpoint to run from May 26, 1995, to August 31, 1996. This final amendment also significantly increased the number of officers authorized to participate in the checkpoint. Rather than listing each officer by name, this final amendment simply allowed "[a]ll sworn and/or certified law enforcement officers" from the Utah County Sheriff's Office, the Utah Highway Patrol, the Utah Division of Wildlife Resources, the United States Forest Service, and the Utah State Parks and Recreation to participate in the checkpoint, stipulating only that the checkpoint supervisor be a sergeant, lieutenant, or captain of the Utah County Sheriff's Office.

On September 16, 1995, around 6:35 p.m., a deputy from the Utah County Sheriff's Office stopped defendant at the Tibble Fork Canyon traffic checkpoint. During the course of the stop, the deputy discovered that defendant did not have a valid driver's license and that she was driving an unregistered car. Because no one else in the car could legally drive the car, it was impounded.

Another deputy asked defendant to exit the car. Defendant appeared to the deputy to be very angry and upset. Because the Tibble Fork Canyon area is remote and because the deputy realized defendant and her friends would be waiting unsupervised until a ride was available, the deputy asked defendant if she had any weapons. Defendant replied that she did not have a knife. Defendant's answer made the deputy even more concerned for his safety, so he conducted a *Terry* frisk, *see Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), which led to his discovery of methamphetamine on defendant's person.

Defendant was charged with possession or use of methamphetamine (Count I), unlawful possession of drug paraphernalia, driving on a revoked driver's license, driving without insurance, and driving with expired registration. Defendant pleaded not guilty to all charges and moved to suppress the evidence.

The trial court concluded that the Tibble Fork Canyon administrative traffic checkpoint plan violated Utah law and the United States Constitution because it was overly broad. The court specifically stated three ways in which the plan violated Utah law and the Constitution. First, the duration of the traffic checkpoint was "entirely too long" and did not meet the intent of Utah law. *See generally* Utah Code Ann. § 77–23–104 (1995). Second, the plan violated the statute by not specifically including the names of the officers authorized to conduct the search. *See id.* § 77–23–104(2)(a)(v). Third, the plan's purpose and the instructions given to the officers at the roadblock both went beyond the statute's scope, *see id.* § 77–23–

---

1. The August 1992 amendment simultaneously made the same amendments to eight other administrative traffic checkpoint plans.

2. The same amendments were made to eight other administrative traffic checkpoint plans through the same documents authorizing the Tibble Fork Canyon plan amendments.

104(2), and violated the third criterion of the *Sitz* test. *See Michigan Dep't of State Police v. Sitz,* 496 U.S. 444, 455, 110 S.Ct. 2481, 2488, 110 L.Ed.2d 412 (1990) (stating that third criterion of balancing test is "the degree of intrusion upon individual motorists who are briefly stopped"); *see also* Utah Code Ann. § 77–23–104(2)(b)(i), (ii). Regarding its last point, the trial court explained that roadblocks are ideally set up to check for drunk drivers, and "[b]y broadening the search the officers violate the third criterion of the *Sitz* test and the search conducted at the roadblock becomes too intrusive upon an individual's rights." *Sitz,* 496 U.S. at 455, 110 S.Ct. at 2488 (holding that administrative traffic checkpoint does not violate Fourth Amendment because checkpoint's narrow purpose is preventing drunken driving and system used to carry out checkpoint reasonably advances State's interest to prevent drunken driving); *see also id.* at 455–56, 110 S.Ct. at 2488 (Blackmun, J., concurring) (stressing number of tragedies caused by drunken driving in United States).

Nevertheless, the trial court determined the evidence should not be suppressed because, it concluded, the good faith exception to the exclusionary rule applied to defendant's stop. Therefore, the trial court denied defendant's motion to suppress.

After the trial court denied her motion to suppress, defendant conditionally pleaded no contest to Count I, preserving for appeal the issues raised in her motion to suppress. *See State .v. Sery,* 758 P.2d 935 (Utah Ct.App. 1988). Defendant now appeals the trial court's application of the good faith exception and the resulting denial of her motion to suppress.

## ISSUE AND STANDARD OF REVIEW

The trial court determined that the administrative traffic checkpoint plan under which the officers who stopped defendant were operating violated Utah Code Ann. § 77–23–104

(1995) and the Fourth Amendment to the United States Constitution. On appeal, both the State and defendant agree with the trial court that the plan violated Utah law and the Constitution. We therefore need not review whether the plan violated Utah law or the Constitution. Instead, the only issue we address on appeal is whether the good faith exception to the exclusionary rule applies to this case. Specifically, we address whether the good faith exception applies to admit evidence obtained after making a warrantless administrative traffic checkpoint stop, which was conducted pursuant to a judicially approved administrative traffic checkpoint plan that violated both Utah law and the United States Constitution.[3]

Whether the good faith exception applies to an administrative traffic checkpoint stop under these circumstances is an issue of first impression in Utah. Resolution of this issue requires us to examine and interpret United States Supreme Court cases discussing the good faith exception to the exclusionary rule. Because appellate courts are in as good a position as trial courts to interpret case law, we consider the issue before us as presenting a question of law and therefore review the trial court's decision for correctness. *See State v. Richardson,* 843 P.2d 517, 518 (Utah Ct.App.1992); *cf. Stevensen v. Goodson,* 924 P.2d 339, 346 (Utah 1996).

## ANALYSIS

In *Weeks v. United States,* 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914), *overruled in part by Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), *overruled in part by Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), the United States Supreme Court held, for the first time, that " 'in a federal prosecution the Fourth Amendment barred the use of evidence secured through an illegal search and seizure.' " *Mapp,* 367 U.S. at 648, 81 S.Ct. at 1688 (quoting *Wolf v. Colorado,* 338 U.S. 25, 28, 69 S.Ct. 1359, 1361, 93 L.Ed. 1782 (1949),

---

**3.** Defendant urges us to address the constitutionality of Utah Code Ann. § 77–23–104, which outlines the requirements of an administrative traffic checkpoint. However, "Utah courts have consistently refused to reach the constitutionality of a statute when there are other independent

grounds to resolve the case." *State v. Ramirez,* 924 P.2d 366, 370 (Utah Ct.App.1996). In accordance with this principle, we decline to determine the constitutionality of section 77–23–104 because we decide this case on other grounds.

*overruled by Mapp* ). Forty-seven years later, in *Mapp v. Ohio,* the Supreme Court declared that the exclusionary rule also applied in state courts by holding "that all evidence obtained by searches and seizures in violation of the Constitution is, by that same authority, inadmissible in a state court." *Mapp,* 367 U.S. at 655, 81 S.Ct. at 1691.

Twenty-three years after *Mapp,* in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the United States Supreme Court established a good faith exception to the exclusionary rule. The good faith exception announced in *Leon* provides that the exclusionary rule does not bar the use in the prosecution's case in chief of evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause. *See id.* at 900, 913, 104 S.Ct. at 3409, 3415.

Three years after *Leon,* in *Illinois v. Krull,* 480 U.S. 340, 107 S.Ct. 1160, 94 L.Ed.2d 364 (1987), the Supreme Court announced another exception to the exclusionary rule "similar" to that announced in *Leon. Id.* at 342, 107 S.Ct. at 1163. In *Krull,* the Court announced that a good faith exception to the exclusionary rule applied "when an officer's reliance on the constitutionality of a statute is objectively reasonable, but the statute is subsequently declared unconstitutional." *Id.* at 346, 353, 107 S.Ct. at 1165, 1168–69.

The State, relying on *Leon* and *Krull,* asserts the trial court correctly applied the good faith exception to the exclusionary rule in this case. However, we conclude that the case before us presents a situation different enough from *Leon* and *Krull* that the good faith exceptions announced in those cases do not apply to the case before us.

The good faith exception established in *Leon* applies to circumstances in which an officer applies for a warrant allegedly supported by probable cause, the officer receives a judicially authorized warrant, the officer acts in objectively reasonable good faith on the warrant, and then a judge determines the warrant was not supported by probable cause. In this case, the officers relied on a judicial officer's approval. However, the facts of this case otherwise significantly differ from those in a *Leon* exception situation. Here, the officers who stopped defendant did not conduct their seizure pursuant to a judicially issued warrant that was later found to be unsupported by probable cause. Rather, in this case the officers implementing the plan seized defendant and all other motorists passing through the traffic checkpoint pursuant to a judicially approved plan. In addition, no showing of probable cause, or even reasonable suspicion, was ever required of the officers seeking the approval of the administrative traffic checkpoint plan. The absence of *any* probable cause showing, mistaken or otherwise, is a significant difference.

The Court also limited the good faith exception to the exclusionary rule announced in *Krull* to situations different from that before us. The *Krull* good faith exception applies to the narrow situation where an officer acts in objectively reasonable good faith reliance on a statute that authorizes the officer to conduct warrantless searches, which statute is later determined to be unconstitutional. The case before us falls outside the *Krull* exception in three significant ways.

First, unlike in *Krull,* the officers in this case were not acting pursuant to a statute that was later declared unconstitutional. *See Krull,* 480 U.S. at 342–346, 107 S.Ct. at 1163–65. Instead, the officers in this case were acting pursuant to a judicially approved administrative traffic checkpoint plan. Second, it was the plan, not the statute, that was declared unconstitutional. The statutes authorizing administrative traffic checkpoint plans, *see* Utah Code Ann. §§ 77–23–103(5), –104 (1995), have not been declared unconstitutional.

Third, in this case the trial court determined, and both parties agree, that the Tibble Fork Canyon traffic checkpoint plan violated the state statute authorizing administrative traffic checkpoints. *See id.* However, in *Krull,* the Supreme Court specifically excluded from the scope of the good faith exception the situation where an officer acts in violation of the state statute au-

thorizing the search. *See Krull,* 480 U.S. at 360 n. 17, 107 S.Ct. at 1172–73 n. 17 (declining "to recognize an exception for an officer who erroneously, but in good faith, believes he is acting within the scope of a statute"). In other words, under *Krull,* even if an officer acts in good faith reliance on a statute, the *Krull* good faith exception would not apply if the officer acted outside the statute's scope. *See id.* at 360 n. 17, 107 S.Ct. at 1172–73 n. 17. Indeed, the officers here were acting outside the scope of the statute.

Because the circumstances of this case significantly differ from the circumstances in *Leon* and *Krull,* we hold that neither the *Leon* nor the *Krull* good faith exception applies to the case before us.[4]

We note, in recognition of the emphasis the Supreme Court placed on the deterrent purpose of the exclusionary rule in *Leon* and *Krull, see Leon,* 468 U.S. at 907 & n. 6, 916–21, 104 S.Ct. at 3412 & n. 6, 3417–19; *Krull,* 480 U.S. at 347–49, 107 S.Ct. at 1165–67, that allowing the exclusionary rule to exclude evidence obtained under the circumstances of the case before us does serve a deterrent function. The officers who actually conduct the administrative traffic checkpoint stops by stopping passing cars and briefly checking for specified violations may not be deterred by suppressing illegally obtained evidence because they are merely carrying out orders to conduct the approved stops. However, other involved officers should be deterred by the suppression of evidence obtained in a manner that violates the Constitution. At the very least, those involved with proposing the administrative traffic checkpoint plan and seeking judicial approval of it must be encouraged to conform their actions to both state statutes and the Constitution.

▮ Moreover, we decry the mechanism by which the Utah County Attorney's Office sought to enlarge the application of the administrative traffic checkpoint statute. Instead of presenting the judicial officer from whom approval was sought with a new and coherent plan each time a change was sought, the county attorney simply presented amendments, all contained within the same short document, that referred to the original administrative traffic checkpoint plans. Each time the plan was presented, both the county attorney, as an officer of the court, and the judge approving the plan, as a judicial officer, had an obligation to examine the entire plan in terms of the statutory requirements. In addition, had the county attorney presented the plan and its amendments in terms of the statute, and had the judicial officer reviewed them as such, statutory violations may have been avoided. It is difficult to see how the plan would have been approved, at least in terms of its compliance with the statute, had such a procedure been followed. The statute clearly states requirements that were not followed in this case, such as the requirement that officers on the plan's roster be listed by name. *See* Utah Code Ann. § 77–23–104(2)(a)(v).

Absent an exception to the exclusionary rule, *Mapp* requires us to exclude "all evidence obtained by searches and seizures in violation of the Constitution." *Mapp,* 367 U.S. at 655, 81 S.Ct. at 1691. There is no dispute that the stop of defendant at the Tibble Fork Canyon traffic checkpoint was unconstitutional. Nor is there any dispute that, absent the good faith exception, all evidence obtained subsequent to defendant's stop should be suppressed as "fruit of the poisonous tree." *Wong Sun v. United States,* 371 U.S. 471, 487–88, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963). The United States Supreme Court has reserved to itself the power to announce exceptions to the exclusionary rule. None of the good faith exceptions announced by the Court apply here. As a result, we have no alternative but to conclude that no good faith exception to the exclusionary rule applies to this case. We reverse the trial court's suppression ruling and remand for further proceedings consistent with this opinion.

---

4. We emphasize that we do not reach the issue of whether officers, when strictly complying with the administrative traffic checkpoint statute, may act in good faith if the statute is later ruled unconstitutional. *See Krull,* 480 U.S. at 355 n. 12, 107 S.Ct. at 1170–71 n. 12 (noting Court sees "no valid reason to distinguish between statutes that define substantive criminal offenses and statutes that authorize warrantless administrative searches").

## CONCLUSION

We hold that the trial court erred by concluding the good faith exception to the exclusionary rule applies to the case before us. We therefore hold that all evidence obtained as a result of defendant's administrative traffic checkpoint stop must be suppressed pursuant to *Mapp* and *Wong Sun.*

Reversed and remanded.

BILLINGS, J., concurs.

BENCH, Judge, dissenting:

The main opinion holds that the exclusionary rule applies in this case because judicial officers erred in approving the administrative traffic checkpoint. However, the United States Supreme Court has consistently held that the exclusionary rule applies only to police misconduct, not judicial misconduct. Because the main opinion does not follow controlling precedent, I respectfully dissent.

According to the United States Supreme Court, the purpose for the exclusionary rule is to deter police misconduct. In *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the Court stated that

> "The deterrent purpose of the exclusionary rule necessarily assumes that the police have engaged in willful, or at the very least negligent, conduct which has deprived the defendant of some right. By refusing to admit evidence gained as a result of such conduct, the courts hope to instill in those *particular investigating officers, or in their future counterparts,* a greater degree of care toward the rights of the accused. Where official action was pursued in complete good faith, however, the deterrence rationale loses much of its force."

*Id.* at 919, 104 S.Ct. at 3418 (quoting *United States v. Peltier,* 422 U.S. 531, 539, 95 S.Ct. 2313, 2318, 45 L.Ed.2d 374 (1975)) (emphasis added). In *Illinois v. Krull,* 480 U.S. 340, 107 S.Ct. 1160, 94 L.Ed.2d 364 (1987), the Supreme Court reiterated that "the 'prime purpose' of the exclusionary rule 'is to deter future unlawful police conduct and thereby

effectuate the guarantee of the Fourth Amendment against unreasonable searches and seizures.'" *Id.* at 347, 107 S.Ct. at 1165 (quoting *United States v. Calandra,* 414 U.S. 338, 347, 94 S.Ct. 613, 619, 38 L.Ed.2d 561 (1974)); *see also Arizona v. Evans,* 514 U.S. 1, 14, 115 S.Ct. 1185, 1193, 131 L.Ed.2d 34 (1995) (noting "exclusionary rule was historically designed as a means of deterring police misconduct, not mistakes by court employees"). Thus, the Supreme Court clearly and consistently has held that the exclusionary rule applies solely to police misconduct.

In an attempt to distinguish this case from the *Krull* case, the main opinion erroneously concludes that "[i]ndeed, the officers here were acting outside the scope of the statute." The Utah Legislature has specifically provided that *the authorizing magistrate,* not police officers or even the county attorney, shall determine whether an administrative traffic checkpoint complies with the statute. *See* Utah Code Ann. § 77–23–104 (Supp.1997). Thus, the officers did not act outside the scope of the statute; their actions were fully consistent with the judicially approved administrative traffic checkpoint plan.

In the present case, the investigating officer followed a judicially approved plan that was ultimately determined to be outside the statute's scope.[1] The United States Supreme Court has held that

> [i]n the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient. "[O]nce the warrant issues, there is literally nothing more the policeman can do in seeking to comply with the law." Penalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations.

*Leon,* 468 U.S. at 921, 104 S.Ct. at 3419 (quoting *Stone v. Powell,* 428 U.S. 465, 498, 96 S.Ct. 3037, 3054, 49 L.Ed.2d 1067 (1976) (Burger, C.J., concurring)). The Supreme Court has expressly ruled that "evidence

---

1.  The main opinion erroneously states that "the State and defendant agree with the trial court that the plan violated Utah law and the Constitution." The State, however, only assumes *arguen-* do that the plan violated Utah law and the Constitution and urges this court to only rule "whether the trial court properly determined that the officers acted in good faith."

should be suppressed '*only* if it can be said that the *law enforcement officer* had knowledge, or may be properly charged with knowledge, that the search was unconstitutional under the Fourth Amendment.'" *Krull*, 480 U.S. at 348–49, 107 S.Ct. at 1166 (quoting *Peltier*, 422 U.S. at 542, 95 S.Ct. at 2320) (emphasis added). The investigating officer therefore cannot be expected to question whether the form of a checkpoint plan is technically sufficient. The officer acted in reasonable good faith that the judicially approved plan conformed to the law. Hence, the trial court properly ruled that the officer seized the evidence in good faith reliance on the magistrate's approval of the checkpoint plan.

In *Arizona v. Evans*, 177 Ariz. 201, 866 P.2d 869 (Ariz.1994) *rev'd* 514 U.S. 1, 115 S.Ct. 1185, 131 L.Ed.2d 34 (1995), the Arizona Supreme Court took an erroneous approach similar to the main opinion. In *Evans*, the investigating officer ran a computerized records check after a routine traffic stop and discovered that the defendant had a misdemeanor warrant for his arrest. *See id.* at 870. Through a subsequent warrantless search of the defendant's vehicle, the officer found marijuana under the passenger seat. *See id.* Unbeknownst to the arresting officer, the arrest warrant had been quashed by the issuing justice court, and court personnel had failed to expunge it from the computer. *See id.* Based on that information, the trial court suppressed the evidence. *See id.* The Arizona Court of Appeals reversed the trial court because the mistake was "made by justice court employees instead of law enforcement personnel." *Id.* The Arizona Supreme Court reversed the court of appeals and ruled that it is proper to invoke the exclusionary rule where negligent record keeping results in the discovery of contraband. "Such an application will hopefully serve to improve the efficiency of those who keep records in our criminal justice system." *Id.* at 872.

On certiorari, the United States Supreme Court stated that the Arizona Supreme Court's "holding is contrary to *Leon; Massachusetts v. Sheppard*, 468 U.S. 981, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984); and *Krull*. If

court employees were responsible for the erroneous computer record, the exclusion of evidence at trial would not sufficiently deter future errors so as to warrant such a severe sanction." *Evans*, 514 U.S. at 14, 115 S.Ct. at 1193. The Court explained its reasoning as follows:

> First, as we noted in *Leon*, the exclusionary rule was historically designed as a means of deterring police misconduct, not mistakes by court employees. Second, respondent offers no evidence that court employees are inclined to ignore or subvert the Fourth Amendment or that lawlessness among these actors requires application of the extreme sanction of exclusion. . . .
>
> Finally, and most important, there is no basis for believing that application of the exclusionary rule in these circumstances will have a significant effect on court employees responsible for informing the police that a warrant has been quashed.

*Id.* (citations omitted). Consequently, the Court reversed the Arizona Supreme Court and held that the evidence was admissible under the good faith exception. *Id.* at 16, 115 S.Ct. at 1194 (citations omitted). In so doing, the Court affirmed its earlier decisions of *Leon* and *Krull* by holding that only police misconduct is deterred by suppressing evidence seized in violation of the Fourth Amendment.

The United States Supreme Court has consistently declined to impose the draconian sanction of excluding evidence when a magistrate acts improperly. In reviewing the *Leon* decision in *Evans*, the Supreme Court ruled as follows:

> On the basis of three factors, we determined that there was no sound reason to apply the exclusionary rule as a means of deterring misconduct on the part of judicial officers who are responsible for issuing warrants. First, we noted that the exclusionary rule was historically designed " 'to deter police misconduct rather than to punish the errors of judges and magistrates.'" Second, there was " 'no evidence suggesting that judges and magistrates are inclined to ignore or subvert the

Fourth Amendment or that lawlessness among these actors requires application of the extreme sanction of exclusion.'" Third, and of greatest importance, there was no basis for believing that exclusion of evidence seized pursuant to a warrant would have a significant deterrent effect on the issuing judge or magistrate.

*Evans*, 514 U.S. at 11, 115 S.Ct. at 1191 (quoting *Krull*, 480 U.S. at 348, 107 S.Ct. 1160 (quoting *Leon*, 468 U.S. at 916, 104 S.Ct. at 3417)). Here, the main opinion recognizes that the investigating police officer acted in good faith when he seized the drugs from the defendant. The main opinion, nonetheless, excludes the evidence to punish the erring magistrate. The main opinion defies Supreme Court precedent in so ruling. *See id.* at 8–9, 115 S.Ct. at 1190 (noting "[s]tate courts ... are *not* free from the final authority of this Court").

I therefore dissent. I would affirm the trial court's ruling that the evidence should not be suppressed because the good faith exception to the exclusionary rule clearly applies.