Associate Chief Justice LEE,
opinion of the court as to Part I and Part II.A and concurring in the judgment of the court as to Part ILB.:
1 Mill Man Steel fired Kendall Utley on suspicion that he had misappropriated steel from the company. In so doing, Mill Man refused to pay Utley the commissions he claimed to have earned, asserting a right to withhold the commissions as an offset against the value of the allegedly misappropriated steel. Utley filed this suit, claiming that Mill Man had violated the Utah Payment of Wages Act (UPWA). The district court granted summary judgment for Utley. It held that Mill Man was required to pay Utley his commissions and that Mill Man could not qualify under a UPWA provision allowing an employer to withhold earned wages upon "presentling] evidence that in the opinion of a hearing officer ... would warrant an offset." Ura Cop® $ 84-28-8(5)(c) (2018).[1]
T2 We reverse. We interpret this provision to allow Mill Man to present evidence to the district court in an attempt to establish that Utley's misappropriation "would warrant an offset" justifying Mill Man's failure to pay Utley's commissions. A contrary ruling would render the subsection (5)(c) exception a practical nullity. We avoid that result by interpreting the statute to allow an employer in a case like this one to seek a post-withholding opinion of a court or administrative law judge that an offset , was warranted. Such employer does so at its peril, however. If the offset is not found to be warranted, the employer will be subject to liability and penalties under the UPWA.
I
1 3 In July 2009, appellant Mill Man hired Kendall Utley as a sales and purchasing agent to sell its steel plate and coil. A short time later, Utley opened a Mill Man office in Pleasant Grove, at the site of one of Utley's existing customers, Rocky Mountain Welding (RMW). Under the employment arrangement with Utley, Mill Man sent inventory to the RMW location and Utley was paid on a commission basis. About a year later, however, Mill Man went to the RMW site for an inspection and discovered that some 700 tons of steel-roughly 40 percent of the logged inventory-was missing. The value of the missing steel allegedly was about $870,000. Mill Man promptly fired Utley.
T4 Prior to his termination, Utley sold amounts of steel that purportedly entitled him to commissions totaling $100,479.99. Shortly after Mill Man fired Utley, however, it informed him that it would not pay any of his outstanding commissions but was retaining them to offset its losses. Utley then filed suit claiming breach of contract and a violation of the Utah Payment of Wages Act. Mill Man raised affirmative defenses and counterclaims, including recoupment and offset, breach of fiduciary duty, conversion, fraud, and imposition of a constructive trust.
15 Utley moved for summary judgment. Mill Man opposed the motion, arguing that it did not owe Utley his commissions due to his breach of fiduciary duty and, alternatively, that Mill Man was due an offset under the *994 UPWA in the amount of $370,000 because of Utley's negligence:
T6 The district court granted summary judgment in favor of Utley. It was undisputed that Utley was owed $100,479.99 in commissions. And in the district court's view, the UPWA did not permit a preemptive withholding of these commissions. Thus, the district court concluded that Mill Man was required to pay Utley his commission under the terms of the UPWA. It also imposed a penalty on Mill Man to the tune of some $50,000. In all, the district court awarded Utley $205,262.37.
T7 Mill Man appealed. We review the summary judgment decision below de novo, yielding no deference to the district court. See, e.g., Bahr v. Imus, 2011 UT 19, ¶¶ 12-18, 250 P.3d 56.
II
T8 The UPWA provides that [whenever an employer separates an employee from the employer's payroll the unpaid wages of the employee become due immediately, and the employer shall pay the wages to the employee within 24 hours of the time of separation at the specified place of payment. uras cop® § 84-28-5(1l)(a). An employer who fails to make this payment in this timeframe, moreover, is guilty of unlawfully withholding wages under the UPWA. Id. § 84-28-12(1). And the sanctions for unlawful withholding are significant, including not only a statutory fine,[2] but even eriminal Hability.[3]
T 9 This case implicates an exception to the general rule. Under the exception, withholding of wages is permitted where "the employer presents evidence that in the opinion of a hearing officer or an administrative law judge would warrant an offset." Id. § 34-28-8(5)(c) This exception is one in a series. The others listed in the statute allow an employer to withhold earned wages where "the employer is required to withhold or divert the wages" because of a court order or 'state or federal law; "the employee expressly authorizes the deduction in writing"; or "the employer withholds or diverts the wages" in accordance with certain authorized retirement plans. Id. § 34-28-8(5)(a), (b), and (d).
¶10 Mill Man claims a right to invoke the subsection 5(c) exception in this case. It asserts that Utley's misappropriation of its steel is a matter that "would warrant an offset" against his commissions, and finds error in the district court's refusal to allow it to present evidence in support of that claim. Utley defends the district court's decision on two grounds: (a) that the statute requires an employer to secure an "opinion" as to the viability of an offset before withholding any wages; and (b) that a district court judge is not a "hearing officer" under the terms of the UPWA. We disagree on both counts, and reverse and remand for further proceedings.
A
{11 Utley first defends the district court's decision on timing grounds. He claims that subsection 5(c) is unavailable because this provision makes the opinion of the hearing officer a precondition to the right of the employer to withhold. Utley bases this position on two grounds: (1). the terms of the exception-specifically the proviso that the exception allowing withholding is not available "unless" the employer presents evidence that is deemed by the hearing officer to "warrant an offset," Urax Copg § 34-28-3(5)(c), and (2) the structure of the statute-the fact that the other, parallel exceptions in the UPWA appear to be preconditions. We find neither point persuasive, and according ly reject this basis for foreclosing Mill Man's reliance on subsection 5(c).
1
12 The term "unless" is one of condition. WeBstsr'$ THirp New Inpernarionat Dic *995 TIONARY 2503 (2002) (defining "unless" as "except on the condition that"); American Hrt Tacs Dictionary 1402 (2d ed.1981) (same). But without more, the conditional construct of this term does not impose a temporal limitation. We can easily speak of unless conditionality without reference to timing, as in a parent's condition to a child that "you may not take the car unless you fill it with gas. C
113 Granted, wnless conditionality is sometimes temporal. Depending on context, the child subject to the above requirement might properly understand it as a precondition. That might hold, for example, if everyone knows that the car's gas gauge is currently on empty. But context could also eliminate the timing element-and leave only the condition, That, in fact, might be the better interpretation of the parent's directive to fill the car with gas in certain circumstances, If the car has plenty of gas in it for the child's errand, 'presumably the parent would prefer that the tank be filled after the child uses it. And in that cireumstance "unless" would properly be understood as a condition, but not a precondition.
14 In our view, the same holds for the "unless" condition in subsection 5(c) of the UPWA. We interpret the term "unless" in subsection 5 as merely expressing a condition (without any suggestion as to timing )[4] That conclusion follows, as explained below, from the relevant surrounding civeum-stances-specifically, from the legal and practical context of the statute's operation, which render the operation of the 5(c) exception a practical nullity under Utley's approach.
{15 Under Utley's interpretation of the statute, an employer wishing to withhold wages on the basis of a claim of an offset must first file a pre-withholding legal proceeding and convince a hearing officer to render an "opinion" that the employer's "evidence ,.. would warrant an offset." Urax Cop® § 34-28-8(b)(c). As we understand the statutory scheme, however, these preconditions are a barrier that few if any litigants could overcome-at least within the 24-hour period in which an employer is required to pay wages after termination. We know of no mechanism in the statutory or regulatory scheme under the UPWA that would allow an employer to withhold under subsection 5(c) while still protecting itself from Hability for unlawful withholding. And the absence of such a mechanism would render the 5(c) exception a nullity under Utley's interpretation. We reject that interpretation on that basis,. See VCS, Inc. v. Utah Community Bank, 2012 UT 89, ¶ 18, 293 P.3d 290 (rejecting an interpretation of a statute because it ran "afoul of the settled canon of preserving independent meaning for all statutory provisions").
] 16 The wheels of justice can occasionally be put in motion in a hurry, as by entry of a stay or a temporary restraining order. But an employer with an obligation to pay a terminated employee within 24 hours (without withholding any "offset" amount) would be hard-pressed to secure a judge's "opinion" on evidence of an offset within that narrow timeframe.
17 None of the options presented by the dissent, infro 11 8-80, is viable. The notion of a "preliminary finding," infra 180, based on a "threshold showing" or a "proffer of evidence," infre 179, would require the development of a new procedural mechanism unknown by our current rules of civil procedure. We see no basis for inferring a "legislative intent" to require our courts to 'establish such a sui generis proceeding. - Infro 179. To alter our civil rules in this way, the legislature would have to do more than vaguely intend to do so. It would have to follow the *996 constitutional prerequisites for amending the rules of this court. See Urax Const. Art. Vi, § 4 (requiring a two-third majority vote of both houses in order for the legislature to amend rules of procedure that have been adopted by the Utah Supreme Court). In the absence of such a move by the legislature, we cannot lightly presume that it intended to embrace the novel procedural mechanism imagined by the dissent.
{18 Our rules do encompass means for preliminary, non-final decisions-in the limited cireumstance of entry of a stay, Utan R. Civ. P. 62, or of entry of a temporary restraining order or preliminary injunction, id. at 65A. But none of these mechanisms is viable here. hot
119 A "stay" is a misfit An employer seeking to invoke the subsection 5(c) exception would not be seeking to halt a judgment or the implementation of a-law. See id. at 62. (providing for stays of execution of judgments, stays pending appeal, and injunctions pending appeal), It would be seeking an "opinion" on the merits of a pending case; and that is not the function of a stay.
(20 A "preliminary injunction," see infra 1 81, is both ill-suited and practically unavailable in the 24-hour timeframe established by statute. - An employer would be hard-pressed, in a case where mere money is at stake, to make the showing of irreparable harm that is necessary to sustain entry of a preliminary. injunction. See UTax R. Civ. P. 65A(e)(1) (requiring applicant to show that "wreparable harm" will occur absent an injunction); Hunsaker v. Kersh, 1999 UT 106, ¶ 9, 991 P.2d 67 ("Irreparable injury justifying an injunction is that which cannot be adequately compensated in damages or for which damages cannot be compensable in money." (internal quotation marks omitted)). And even if such a showing could be made, it would be difficult, at best, to do so within the 24-hour time period mandated by the UPWA.
T21 Granted, an "[elx parte motion[ ] for emergency relief" could conceivably be resolved within a 24-hour period. Infra T 81. But a merits-based "opinion" on the legal viability of an offset could hardly be entered on an ex parte basis. Surely, an adversary preliminary injunction hearing would be required. And the odds of such a hearing being noticed,. held, and resolved within 24 hours are long (if not impossible). The "stay" imagined by the dissent is no legitimate answer. Infra ¶ 81. It would be highly anomalous for the usual operation of a statutory exeeption to require the entry of a preliminary injunction and stay blocking en-foreement of the core requirement of the statute-all within 24 hours.
1 22 The practical difficulty associated with the heroic procedural measures proffered by the dissent persuades us to reject Utley's construction of the "unless" condition in seetion 5. If an employer cannot reasonably withhold wages under subsection 5(c) before a court renders an opinion through the ordinary course of litigation, the better view is that "unless" is not a precondition. We adopt that construction on the ground that it avoids the effective nullification of the employer's right to withhold based on a judge's determination that the employer's evidence "warrant[s] an offset." Utan Copg § 34-28-3(5)(c).
123 As Mill Man has suggested, the UPWA can easily be interpreted to subject employers to penalties and sanctions for unlawful withholding if they are later deemed to have withheld amounts that do not "warrant an offset" in the judge's "opinion." That is a better interpretation of the statute than one that renders one of its provisions a nullity.
24 The potential for criminal liability is no barrier to our view of the statute, or for overriding its terms on the basis of a supposed absurdity. See infra ¶ 76. Granted, the statute "makes no exception for good-faith counterclaims that the employer is later unable to prove in court." Infra ¶ 76. And the risk of criminal lability attaches "the moment a court rules in the employee's favor" under the UPWA, "even in a close case where the employee satisfies the preponderance of the evidence standard only by the narrowest of margins." Infra ¶ 76. But the legislature apparently decided that the threat of eriminal liability was important-as a deterrent to an employer's violation of the stat *997 ute. Without an element of bad faith, moreover, the dissent is right that the potential for criminal Hability arises whenever an employer is found to have violated the statute.
125 That does not mean that criminal charges would be brought in every case, however. One response to the dissent's concern is to recall the buffer that is provided by the mechanism of prosecutorial discretion. A prosecutor would presumably be inclined to withhold criminal charges in a case in which the employer's withholding is made in good faith but rejected on the "narrowest of margins."
126 In any event, the dissent's proffered solution does nothing to solve its concern regarding criminal liability. An employer that is preliminarily deemed entitled to withhold wages but ultimately found in violation of the statute has a strong basis for asserting that it acted in good faith. But such an employer would still be subject to criminal lability for "fail{ing] to comply with" a provision of the UPWA. Utax Cop® § 34-28-12(1). So under either interpretation of the subsection 5(c) "unless" proviso, an employer must "risk criminal liability in order to pursue a good-faith counterclaim." Infra ¶ 76. Thus, the potential for such liability is no basis for favoring Utley's view; it is simply a strong disincentive for an employer to advance a meritless claim of a right to withhold wages.
2
1 27 The structure of the UPWA does not support Utley's approach. As Utley indicates, other exceptions in subsection 5 may be considered in resolving ambiguities in subsection 5(c). But the terms of those exceptions cannot properly be read to impose a temporal condition on the 5(c) exception.
I 28 Granted, the other subsection 5 exeep-tions appear to be formulated in terms that may be satisfied before an employer's withholding. Utan Copm § §4-28-8(5)(a), (b), and (d) (providing exceptions for withholding under a court order or statute, an authorization signed by an employee, and in accordance with an approved retirement plan). But we cannot agree that these provisions impose a similar restriction on subsection 5(c) under the moscitur a sociis canon of construction. See infra ¶ 17-18.
129 First, semantic canons are not rigid rules of construction; they are only presumptive principles of ordinary usage.[6] Such principles may easily be rebutted by contrary indications of statutory meaning in context. And here we have a strong contrary indication-in the indisputable fact that the proposed use of the noscitur canon effectively eviscerates an entire provision of the statute.[7]
30 Second, the moscitur canon is inherently dependent on a threshold-and often subjective-judicial assessment of the " 'common feature'" of the terms from which the court attempts to "'extrapolate meaning."" Infra ¶ 68 (quoting Thayer v. Washington Cnty. Sch. Dist., 2012 UT 31, ¶ 15, 285 P.3d 1142). And that element sometimes renders this canon indeterminate, as where the relevant "common attribute" in question is open to debate. See Ali v. Fed. Bureau of Prisons, 552 U.S. 214, 225-26, 128 S.Ct. 831, 169 L.E.2d 680 (2008) (rejecting the utility of the noscitur canon on this basis)[8] That is the case here.
131 On one hand, the common feature of the subsection 5 exceptions could be (as the dissent says) a matter of timing. Infro 170 (asserting that the other exceptions in see *998 tion 5 "permit a withholding only if the employer receives some form of authorization before the withholding takes place"). But that is not the only way to think of the items in the list, Another is to note that each of the exceptions is framed in a manner facilitating the employer's decision to withhold: in the limited time available prior to termination. Thus, to withhold amounts dictated by state or federal law, by court order, or as agreed to by the employee, the employer has all the information it needs -at the time of termination. But that does not hold for a withholding based on "evidence that in the opinion of a hearing officer or an administrative law judge 'would warrant an offset." Ura Cope § 84-28-8(5b)(c) The authority to withhold on that basis necessarily requires subsequent developments-the filing of a legal claim, and the acquisition of the "opinion" of a judge that the evidence "warrant[s] an offset." Id. ©
132 The moscitur canon cannot tell us which of these common features is more significant. Yet the statute itself does.. It does so by including subsection 5(c) as a separate, viable withholding exception. We credit that clear indication of statutory meaning over the vague assertion that the noscitur canon requires us to override it. ~
83 In so doing, we reject Utley's insistence (echoed repeatedly by the dissent) that our conclusion flies in the face of the "central purpose of the UPWA-to ensure the prompt payment of earned wages." [Infra 45.[9] That is certainly a purpose of the statute. But we find no basis for concluding that this was the legislature's only purpose, or that it sought to vindicate this "central purpose" at the expense of all other concerns.
134 As we have emphasized frequently, is rarely aimed at advancing a single objective at the expense of all others." Myers v. Myers, 2011 UT 65, ¶ 27, 266 P.3d 806. "More often, statutes are a result of a legislative give-and-take that balances multiple concerns." Id.[10] Here the relevant concerns encompass the employer's interest in withholding wages under the exceptions set forth in section 5. We must account for that purpose as well, for it is as much expressed in the statute's text as is the purpose of ensuring timely payment of wages to employees See Graves v. Ne. Servs., Inc., 2015 UT 28, ¶ 67, 345 P.3d 619 ("[Thhe governing law is defined not by our abstract sense of legislative purpose, but by the statutory text that survived the constitutional process of bicameralism and presentment."). We reject Ut-ley's view of the subsection 5(c) exception because it elevates the purpose of protecting employees in a manner that effectively nullifies the employer's right to withhold in circumstances warranting an offset. ,
B
(35 Utley also contends that the subseec-tipn 5(ec) exception was not available in this proceeding because the district court judge lacked the statutory authority to implement it. The exception requires an "opinion of a hearing officer or an administrative law judge" regarding the viability of an offset. Utax Cop® $ 34-28-8(5)(c). And because in Utley's view a district court judge is neither a "hearing officer" nor an "administrative law judge," the exception could not be invoked in a case like this one. _
136 Utley's argument has some facial plausibility in the text of the statute. Cer *999 tainly a district court judge is not an "administrative law judge." And "hearing officer," if read in isolation, might more naturally be understood to have reference to an officer presiding over an administrative proceeding. See Bracks Law Dicrionary 790 (Oth ed.2009) _ (providing _ "administrative-law judge" as one definition of "hearing officer").
T37 That said, we do not interpret the terms of statutory provisions in isolation. We read them in context. Olsen v. Eagle Mountain City, 2011 UT 10, ¶ 9, 248 P.3d 465. The relevant context, moreover, must include an understanding of the structure and purpose of the statute. Id. And here that context persuades us to construe the statutory reference to "hearing officer" to encompass district court judges. We reach that conclusion (a) because it is a linguistically plausible reading of the text of the statute and (b) because a contrary reading would lead to absurd results that cannot have been intended by the legislature.
\{38 There is a sense in which a district court judge can be thought of as a "hearing officer." We regularly refer to judges as "judicial officers.[11] And of course a typical responsibility of such an officer is to preside over hearings. It is not unheard of, moreover, for the law to use the terminology of "hearing officer" in a manner encompassing district judges. [12] -
"139 We concede that this is not the most common use of the term “hearlng officer." That phrase is used as a term of art in administrative law. And in that field, "hearing officer" is often understood to refer to an agency-appointed official who presides over an administrative hearing.[13] We reject that interpretation here, however, 'because it would nullify the subsection 5(c) exeeption-by producing absurdities that could not have been intended by the legislature.[14]
*1000 € 40 Utley's reading would render subsection 5(c) void for claims of $10,000 or more. Such high value claims must be brought in district court, See Utan Copm § 34-28-9(1)(d). Thus, under the administrative law notion of "hearing officer," an employer facing claims for unpaid wages of $10,000 or more would be legally prohibited from withholding wages on the basis of an offset. We can think of no rational basis for the legislature to adopt such a restriction on an employer's right to an offset. If anything, an offset would seem to be more important- and more likely-in a case of a high value wage claim. It would be oddly perverse for the legislature to foreclose the employer's right to withhold under 5(c) in the cases where that right would be most important.
{41 The administrative law notion of "hearing officer" would leave open the possibility of an offset in a UPWA case for wages under $10,000. But a strategie employee facing a threat of an offset could block the offset by filing in district court-an option available by statute. - Id. § 34-28-9-So even for lower value claims the subsection 5(c) exception would be a practical dead letter.
1 42 These problems persuade us that the legislature could not have intended to limit "hearing officer" to its narrow meaning in administrative law. In the absence of some rational basis for the legislature to limit an employer's right of offset to lower value claims where the employee fails to file in district court, we conclude that the legislature must have employed "hearing officer" in its broader sense encompassing district judges.
III
For the above reasons we reverse the entry of summary judgment in Utley's favor and remand for further proceedings in the district court. Such proceedings, among other things, may be addressed to the determination whether Mill Man has presented evidence that in the opinion of the district court "would warrant an offset" sufficient to justify Mill Man's withholding of Utley's unpaid commission.

. The UPWA was amended in May 2014. We refer throughout our opinion to the version of the statute in effect at the time of Mill Man's withholding.

. UTAH Cope § 34—28—5(1)(b) (prov1d1ng for a penalty of up to sixty days' wages at the employee's then-current rate).

. Id. § 34-28-12(1) (providing that employer who "violatefs}, or fail[s] to comply with" the UPWA "shall be guilty of a misdemeanor"); id. § 34-28-12(2) (employer who "refuse[s] to pay the wages due and payable when demanded" or "falsely den[ies] the amount thereof, or that the same is due" with the intent to secure a discount or the intent to ' annoy harass, oppress, hinder, delay or defraud," is gullty of a mlsdemeanor "}.

. The dissent challenges our approach as somehow attributing two different meanings to “unless,” depending on its application to the statute's listed exceptions. Infre 131. This misunderstands our position. We do not conclude that "unless" has "a different meaning as applied to subsection (c) than it has as applied to subsections (a) (b) and (d)." Infra ¶ 31. Instead, we hold that "unless" is used consistently in the sense of a mere condition (without a timing element). That sense applies across the board to all of the listed objects of "unless" conditionality. The fact that some of the listed objects will usually be satisfied before the withholding changes nothing. The term "unless" still conveys the simple-and consistent-notion of mere conditionality.

. See Thayer v. Washington Cnty. Sch. Dist., 2012 UT 31, ¶ 37, 285 P.3d 1142 (Lee, J., dissenting) (noting that "[clanons of construction are not universal rules of grammar or syntax," but "rules of thumb that provide potentially useful cues for resolving ambiguity in written text"").

. Seeid. ("[A] recognized exception to the nosci-tur principle acknowledges that a term of broad application should not be narrowed by its neighboring text when its broad meaning is clear.") (emphasis in original); Russell Motor Car Co. v. United States, 261 U.S. 514, 519, 43 S.Ct. 428, 67 L.Ed. 778 (1923) (holding that noscitur a sociis is "not an invariable rule, for [a] word may have a character of its own not to be submerged by its association").

. See also Yates v. United States, — U.S. —, 135 S.Ct. 1074, 1098, 191 L.Ed.2d 64 (2015) (Kagan, J., dissenting) (noting that the noscitur canon can be manipulated to "switch on and off whenever convenient" in selecting a common feature that ties a group of words together).

. See also infra T 45 (asserting that our conclusion "frustrates the central purpose of the UPWA"); 165 ("the majority turns the essential purpose of the statute on its head"); 1166 (referring to the "central concern animating the UPWA"); 1169 ("The statute's central purpose is to require employers to promptly pay wages unless they can justify nonpayment."); ¶ 74 ([The Act's central purpose is to assure that employees receive prompt payment of earned wages.").

. See also McArthur v. State Farm Mut. Auto. Ins. Co., 2012 UT 22, ¶ 14, 274 P.3d 981 (recognizing that "most all" statutory provisions "rep'resent an attempt by the legislature to balance competing policy considerations, not to ad-vancle] a single objective at the expense of all others" (alteration in original) (internal quotation marks omitted)); Olsen v. Eagle Mountain City, 2011 UT 10, ¶ 23 & n. 6, 248 P.3d 465 (noting "the peril of interpreting statutes in accordance with presumed legislative purpose," while emphasizing that "most statutes represent a compromise of purposes advanced by competing interest groups, not an unmitigated attempt to stamp out a particular evil").

. See, eg., Const. Art. VI, § 19, (Judicial officers shall be liable to 1mpeachment for high crimes, misdemeanors, or malfeasance in of fice. ..."); Urax Cope § 20A~1-102(38) (defining “judicial officer" for purposes of the election code as "any justice or judge of a court of record or any county court judge"); id. § 78A-2-218 * (listing powers of "[elvery judicial officer"); State v. Deherrera, 965 P.2d 501, 505 (Utah Ct.App.1998) ("[Tihe judge approving the plan, as a judicial officer, had an obligation to examine the entire plan 'in terms of the statutory requirements."):

. See State v. Orr, 2005 UT 92, ¶ 20, 127 P.3d 1213 (implicitly characterizing district court judges as "hearing officers," in the context of a determination that a district judge satisfies the due process requirements for a probation modification proceeding under Gagnon v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973)-requirements including the "right to confront and cross-examine adverse witnesses[,] unless the hearing officer specifically finds good cause for not allowing confrontation" (emphasis added) (internal quotation marks omitted). While the "hearing officer" in a parole revocation proceeding may be an appointee of an administrative agency, probation modification or revocation proceedings take place in Utah only in district court. Urag Cope § 77-27-5(1)(a) (granting Board of Pardons and Parole authority to handle parole matters, but not probation matters). In this context our Utah cases have used the terminology of "hearing officer" in a manner implicitly encompassing district judges. See Morishita v. Morris, 621 P.2d 691, 694 (Utah 1980) (Wilkins, J., dissenting); State v. Tate, 1999 UT App 302, ¶¶ 10-12, 989 P.2d 73; Layton City v. Peronek, 803 P.2d 1294, 1299 (Utah Ct.App.1990); State v. Hodges, 798 P.2d 270, 273 (Utah Ct.App.1990). And that is a perfectly acceptable, though not the most common, way of using that phrase.

. See Uran Apmim. Cope R610-3-2(G).. But see Hughes Gen. Contractors, Inc. v. Utah Labor Comm'n, 2014 UT 3, ¶ 25, 322 P.3d 712 (holding that Utah courts do not defer to administrative agency interpretations of statutes).

. The dissent rightly distinguishes the "absurd consequences canon" from the "absurdity doctrine." Infra As the dissent notes, the laitter-involving judicial construction of a statute that overrides the "plain meaning" of its text-is "'strong medicine, not to be administered lightly.'" Infra ¶ 48 (quoting Cox v. Laycock, 2015 UT 20, ¶ 71, 345 P.3d 689 (Lee, J., concurring)). But this doctrine is limited to cases where the legislative text is unmistakably clear, or in other words where "there is no sense of a provision-no permissible 'meaning-that can eliminate an absurdity unless the court fixes a textual error." Antonin Scat & Bryan A. Gar Ner, Reaping Law: Teg Inrerprsrarion OF Lecat Texts 234 (2012) (citing the example of a "provision in a statute creating a new claim by saying that 'the winning party must pay the other side's reasonable attorney's fees"), id. at 235; see also, eg., Cernauskas v. Fletcher, 211 Ark. 678, 201 S.W.2d 999, 1000 (1947) (refusing to read literally a provision which read "[alll laws and parts of laws, and particularly Act 311 of the Acts of 1941, are hereby repealed" because "[njo doubt the legislature meant to repeal all laws in conflict with that act, and, by error of the author or the *1000 typist, left out the usual words 'in conflict herewith,' which we will imply by necessary construction"). And we do not view this case as falling into this category. The better reading of the literal text, read in isolation, would be to exclude judicial proceedings before a district court judge. But this is not a case where "there is no sense" of subsection 5(c)-'no permissible meaning"-that can encompass a district judge. Here there is at least a degree of ambiguity, so the question is not one of overriding text that is unmistakably clear. See infra 157 (implicitly acknowledging at least an "obscure understanding of "hearing officer'" encompassing district judges). For that reason we view this as a case for the absurd consequences canon, not the absurdity doctrine.
This is not a case, in other words, where the absurdity is so strong that we would override unmistakably clear language contradicting it. If the legislature had expressly limited the subsection 5(c) exception to "cases filed in an administrative proceeding only, and not those filed in the district court," we would follow the statutory text. Such a statute would be strange, for all of the reasons noted above, but not so absurd that we could override the clear terms the legislature enacted into law.
That said, our position is not far from that of the dissent,. We recognize that our construction of "hearing officer" is not the ordinary or term-of-art sense of the term. See infra ¶60. We emphasize, moreover, that we do not depart from the more natural sense of the statutory text lightly; we do so only in light of a strong conviction that that sense of the statute would yield consequences that are so troubling that we cannot reasonably attribute them to the legislature.