2022 UT 1

IN THE

# SUPREME COURT OF THE STATE OF UTAH

JOHN ZILLERUELO,
*Appellant*,

*v.*

COMMODITY TRANSPORTERS, INC. and STEVEN DECONTO,
*Appellees*.

No. 20200334
Heard September 16, 2021
Filed January 20, 2022

On Direct Appeal

Second District, Farmington
The Honorable John R. Morris
No. 180700727

Attorneys:

Douglas B. Cannon, Madelyn L. Blanchard, Salt Lake City,
for appellant

Matthew D. Church, Daniel E. Young, Carson M. Fuller,
Salt Lake City, for appellees

JUSTICE PEARCE authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE LEE,
JUSTICE HIMONAS, and JUSTICE PETERSEN joined.

JUSTICE PEARCE, opinion of the Court:

## INTRODUCTION

¶1 On a snowy December night, Steven DeConto, a Commodity Transporters, Inc. truck driver, collided his trailer with John Zilleruelo's car. More than four years after the collision, Zilleruelo sued DeConto and Commodity Transporters. DeConto and Commodity Transporters moved for summary judgment, arguing that Zilleruelo had filed his action outside the statute of limitations. Zilleruelo contended that he had timely filed his suit because the accident had rendered him mentally incompetent for

one year, and Utah Code section 78B-2-108(2) had tolled the statute of limitations during the period of his incompetency.

¶2    The district court granted summary judgment to DeConto and Commodity Transporters. The district court concluded that Utah Code section 78B-2-108(2) required a person be both mentally incompetent and without a legal guardian to toll the statute. The district court looked to a power of attorney Zilleruelo had executed nearly twelve years before the collision and concluded that document had created a legal guardianship. That conclusion permitted the district court to decide that the statute of limitations had continued to run during the time Zilleruelo claimed he was incompetent. Zilleruelo appeals. We conclude that the district court misinterpreted section 78B-2-108(2) and reverse.

## BACKGROUND[1]

¶3    On the evening of December 7, 2013, John Zilleruelo was driving south on I-15 in North Salt Lake amid steady snowfall. Steven DeConto was also on the road that evening, driving a truck and pulling a trailer owned by Commodity Transporters. DeConto's trailer collided with Zilleruelo's car.

¶4    On July 19, 2018—four years, seven months, and twelve days after the collision occurred—Zilleruelo filed suit against DeConto and Commodity Transporters (collectively, Commodity Transporters), alleging negligence, vicarious liability, and negligent entrustment.

¶5    In his complaint, Zilleruelo asserted that he had sustained a "severe brain injury" in the collision, which rendered him mentally incompetent for "at least" one year following the accident. Zilleruelo also asserted that during this time, he was

---

[1] This case comes before us as an appeal of the district court's decision to grant DeConto and Commodity Transporters' motion for summary judgment. We thus consider the alleged facts in the light most favorable to Zilleruelo, the nonmoving party. *See Metro. Water Dist. of Salt Lake & Sandy v. SHCH Alaska Trust*, 2019 UT 62, ¶ 9, 452 P.3d 1158 ("We review a grant of summary judgment for correctness, . . . and we review the facts, and inferences to be drawn therefrom, in the light most favorable to the nonmoving party.").

without a legal guardian and "unable to manage his business affairs or . . . comprehend his legal rights or liabilities."

¶6 Commodity Transporters filed a motion for summary judgment, arguing that Zilleruelo had failed to file his complaint within the four-year statute of limitations. In response, Zilleruelo argued that because he was mentally incompetent for the year following the collision, Utah Code section 78B-2-108 (the Tolling Statute) had tolled the statute of limitations.

¶7 Commodity Transporters' motion for summary judgment argued that the Tolling Statute did not toll the statute of limitations for two reasons. Commodity Transporters first averred that Zilleruelo was not mentally incompetent for the year following the accident. Commodity Transporters also argued that even if Zilleruelo was mentally incompetent, the Tolling Statute was nonetheless inapplicable because Zilleruelo had signed a durable power of attorney in Virginia in 2002 in favor of his mother, Maria Sorto (the 2002 POA).

¶8 The 2002 POA authorized Sorto to, among other things, "commence, prosecute, defend, compromise, settle, and adjust all actions, accounts, debts, claims, demands, and all other matters" on Zilleruelo's behalf. It further provided that, "All acts done by my Agent during any period of my disability, incompetence, or incapacity shall have the same effect in all respects as if I were not disabled, incompetent, or incapacitated." Commodity Transporters argued that because the 2002 POA empowered Sorto to act as Zilleruelo's agent, "[h]er acts were binding on him as if he did not have a disability," and therefore, Zilleruelo hadn't experienced a period of mental incompetency that would toll the statute of limitations.

¶9 Zilleruelo countered that the 2002 POA did not create a legal guardianship under Utah law, which, Zilleruelo argued, requires a legal guardian to be court-appointed.[2] Zilleruelo also

---

[2] The 2002 POA states that "[it] shall be governed by the laws of the Commonwealth of Virginia," but the parties dispute whether Virginia law or Utah law controls the ability of the 2002 POA to create a legal guardianship. Because we conclude that the district court misinterpreted the Tolling Statute, this dispute is immaterial to the resolution of this case, and we need not address it.

argued that the statute of limitations had tolled even if the 2002 POA had created a legal guardianship because the Tolling Statute does not condition tolling on the lack of a legal guardian. Zilleruelo asserted that instead, under the plain language of the statute, tolling occurs during the time an individual is mentally incompetent, even if the individual is represented by a legal guardian.

¶10 The district court granted summary judgment to Commodity Transporters. The district court acknowledged "a genuine dispute [of material fact] regarding [Zilleruelo]'s competency during the year following the accident." But the district court concluded that did not prevent the entry of summary judgment because the 2002 POA designated Sorto as Zilleruelo's legal guardian. The court observed that although the Tolling Statute forbids a mentally incompetent individual from bringing a cause of action without a legal guardian, it "does not specify that [the legal guardian] must be . . . 'court-appointed.'" The court then defined a legal guardian, using Utah Uniform Probate Code, as "a person who has qualified as a guardian of a[n] . . . incapacitated person pursuant to testamentary or court appointment." (Citing UTAH CODE § 75-1-201(20).)

¶11 Turning to the language of the 2002 POA, the district court determined that "[Zilleruelo] intended that his agent bring any actions in his name should the need arise." The district court reasoned that by executing the 2002 POA, Zilleruelo intended "to avoid a court-appointed guardian and in effect make it unnecessary for the court to [appoint one]." Based on this inferred intent, the court determined that Sorto was Zilleruelo's legal guardian for purposes of the Tolling Statute. Accordingly, the district court concluded that because the Tolling Statute conditioned tolling on the lack of a legal guardian, and "because [Zilleruelo] had a legal guardian at the time of the incident giving rise to these claims and during the period of his alleged incapacity, the statute of limitations did not toll."

¶12 Zilleruelo appeals. He argues that the district court misinterpreted the Tolling Statute when it conditioned tolling on the lack of a legal guardian.[3]

---

[3] Zilleruelo dedicates much of his appeal to the argument that the district court erred when it concluded that the 2002 POA

(continued . . .)

**ISSUES AND STANDARD OF REVIEW**

¶13 Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." UTAH R. CIV. P. 56(a). "In reviewing a grant of summary judgment, this court views 'the facts in a light most favorable to the losing party below' and gives 'no deference to the trial court's conclusions of law,'" which "are reviewed for correctness." *Goodnow v. Sullivan*, 2002 UT 21, ¶ 7, 44 P.3d 704 (quoting *Blue Cross & Blue Shield of Utah v. State*, 779 P.2d 634, 636 (Utah 1989)).

¶14 Zilleruelo asks us to address three issues, though we need only address one to resolve this matter. That is, whether "the existence of a legal guardian for a mentally incompetent person prevent[s] the statute of limitations from being tolled" under the Tolling Statute. This presents a question of statutory interpretation that we review for correctness. *See State v. Outzen*, 2017 UT 30, ¶ 5, 408 P.3d 334.

**ANALYSIS**

**I. THE DISTRICT COURT ERRED WHEN IT INTERPRETED THE TOLLING STATUTE TO CONDITION TOLLING ON THE ABSENCE OF A LEGAL GUARDIAN**

¶15 Ordinarily, a statute of limitations begins to run once a cause of action is complete. *Myers v. McDonald*, 635 P.2d 84, 86 (Utah 1981). "Once a statute has begun to run, a plaintiff must file his or her claim before the limitations period expires or the claim will be barred." *Russell Packard Dev., Inc. v. Carson*, 2005 UT 14, ¶ 20, 108 P.3d 741. The Utah Legislature has recognized the potential for unfairness to minors and mentally incompetent individuals whose circumstances may render compliance with a statute of limitations difficult. And it has enacted the Tolling Statute, which tolls the limitations period while a plaintiff is underage or mentally incompetent.

---

created a legal guardianship in favor of his mother. But we need not address this argument, because the Tolling Statute tolls the statute of limitations even if a mentally incompetent person has a legal guardian.

¶16   The Tolling Statute states, in pertinent part:

> (1) An individual may not bring a cause of action while the individual is: (a) under 18 years old; or (b) mentally incompetent without a legal guardian.

> (2) During the time that an individual is underage or mentally incompetent, the statute of limitations for a cause of action other than for the recovery of real property may not run.

UTAH CODE § 78B-2-108(1)–(2).

¶17   The district court interpreted the Tolling Statute to toll the statute of limitations only when a plaintiff is both mentally incompetent *and* without a legal guardian. Zilleruelo argues that the district court's interpretation is incorrect because the plain language of the Tolling Statute "does not condition tolling on the existence or nonexistence of a legal guardian." As Zilleruelo reads the statute, "the only requirement to toll a statute of limitations is that the plaintiff is 'incompetent.'"

¶18   "It is well settled that when faced with a question of statutory interpretation, 'our primary goal is to evince the true intent and purpose of the Legislature.'" *Marion Energy, Inc. v. KFJ Ranch P'ship*, 2011 UT 50, ¶ 14, 267 P.3d 863 (quoting *Salt Lake Cnty. v. Holliday Water Co.*, 2010 UT 45, ¶ 27, 234 P.3d 1105). "[T]he best evidence of the [L]egislature's intent is the plain language of the statute itself." *Bagley v. Bagley*, 2016 UT 48, ¶ 10, 387 P.3d 1000 (quoting *Penunuri v. Sundance Partners, Ltd.*, 2013 UT 22, ¶ 15, 301 P.3d 984). We thus begin our analysis with the plain language of the Tolling Statute. *See id.* ("[W]e look first to the plain language of the statute." (quoting *Penunuri*, 2013 UT 22, ¶ 15)).

¶19   "When looking at the plain language, '[w]e presume that the [L]egislature used each word advisedly,' and deem 'all omissions to be purposeful.'" *Colosimo v. Gateway Cmty. Church*, 2018 UT 26, ¶ 46, 424 P.3d 866 (first alteration in original) (quoting *Bagley*, 2016 UT 48, ¶ 10). We are therefore "not to infer substantive terms into the text that are not already there." *Berrett v. Purser & Edwards*, 876 P.2d 367, 370 (Utah 1994). "Rather, the interpretation must be based on the language used." *Id.*

¶20 The Tolling Statute has two relevant subsections.[4] The first prohibits a mentally incompetent individual from initiating a claim "without a legal guardian." UTAH CODE § 78B-2-108(1)(b). With this language—"without a legal guardian"—the Legislature has decreed that a mentally incompetent person cannot bring suit unless that person has a legal guardian.

¶21 The second subsection speaks to a different question. It guarantees that a statute of limitations will not run against a mentally incompetent individual "[d]uring the time that [the] individual is . . . mentally incompetent." *Id.* § 78B-2-108(2). However, the Legislature omitted the language "without a legal guardian" from the second subsection. As noted above, we presume omissions to be purposeful. *See, e.g.*, *Marion Energy*, 2011 UT 50, ¶ 14 ("We . . . seek to give effect to omissions in statutory language by presuming all omissions to be purposeful.").

¶22 Taking note of this omission and deeming it purposeful, the language of the Tolling Statute is plain. A statute of limitations is tolled during a person's mental incompetency, whether or not that person has a legal guardian.

¶23 Commodity Transporters argues for a reading of the Tolling Statute where the second subsection would parallel the first. In other words, Commodity Transporters wants us to read the Tolling Statute to provide: "During the time that an individual is underage, or mentally incompetent *and without a legal guardian*, the statute of limitations for a cause of action other than for the recovery of real property may not run." Without a doubt, the Legislature could have written the Tolling Statute in this way. But also without a doubt, it did not. And it is not our job to second guess the Legislature and insert substantive terms into the statute's text.

¶24 Simply stated, the Tolling Statute provides that the statute of limitations is tolled while a person is mentally

---

[4] The Tolling Statute contains a third subsection not relevant to this appeal. *See* UTAH CODE § 78B-2-108(3) ("A cause of action under this section includes any claim: (a) for general or special damages; or (b) for which a parent or legal guardian of an individual described in Subsection (1) may be financially responsible for the payment of general or special damages.").

incompetent, whether or not that person is represented by a legal guardian. The district court erred when it ruled otherwise.

### A. Commodity Transporters' Arguments to the Contrary Are Not Persuasive

¶25   Commodity Transporters raises three arguments in an effort to convince us that the district court did not err in its interpretation of the Tolling Statute.

### 1. The Tolling Statute's Legislative History Does Not Help Commodity Transporters

¶26 Commodity Transporters first argues that our interpretation of the Tolling Statute is at odds with the statute's legislative history. Commodity Transporters contends that "[t]he development of the Tolling Statute over time" makes clear that "the Tolling Statute has always required, and still does require, a person to be both mentally incompetent and without a legal guardian to toll a statute of limitations."

¶27 Before 1987, the Tolling Statute tolled the statute of limitations for those who were underage, mentally incompetent and without a legal guardian, or imprisoned. *See Sulzen v. Williams*, 1999 UT App 76, ¶ 20, 977 P.2d 497 (citing UTAH CODE § 78-12-36 (1977)). In 1987, the Legislature amended the Tolling Statute. *Id.* Among other things, it "removed prisoners from the provision's scope." *Id.* For the next twenty years, the Tolling Statute provided:

> If a person entitled to bring an action, other than for the recovery of real property, is at the time the cause of action accrued, either under the age of majority or mentally incompetent and without a legal guardian, the time of the disability is not a part of the time limited for the commencement of the action.

UTAH CODE § 78-12-36 (1987) (current version at UTAH CODE § 78B-2-108). In *Ellis v. Estate of Ellis*, we interpreted this language to "not operate if a person is mentally incompetent but has a legal guardian." 2007 UT 77, ¶ 31 n.60, 169 P.3d 441.

¶28 In 2008, less than six months after *Ellis*, the Legislature amended the Tolling Statute to the present version in House Bill No. 78. The bill's long title explained that it was a "Recodification, Revision, and Renumber of Title 78, Utah Code Annotated, 1953." The bill's House sponsor stated that "there [were] no substantial

changes to law in the bill." RECORDING OF UTAH HOUSE FLOOR DEBATES, H.B. 78, 57TH LEG., GEN. SESS. (Jan. 22, 2008) (statement of Rep. Biskupski), le.utah.gov/av/floorArchive.jsp?markerID=54535. The bill was similarly described by a member of the Senate as one with "no substantive changes." RECORDING OF UTAH SENATE FLOOR DEBATES, H.B. 78, 57TH LEG., GEN. SESS. (Jan. 31, 2008) (statement of Sen. Bell), le.utah.gov/av/floorArchive.jsp?markerID=54852.

¶29 Despite that characterization, the Legislature made substantive edits to the text. *See In re Estate of Ostler*, 2009 UT 82, ¶ 6 n.1, 227 P.3d 242 (opting to refer to the 2002 version of the Tolling Statute "[b]ecause substantive changes were made to the statute" in 2008). Most importantly, the Legislature changed the provision that read, "If a person entitled to bring an action . . . is . . . mentally incompetent and without a legal guardian, the time of the disability is not a part of the time limited for the commencement of the action." UTAH CODE § 78-12-36 (1987). House Bill 78 removed the reference to a legal guardian so that the statute read, and continues to read, "During the time that an individual is . . . mentally incompetent, the statute of limitations . . . may not run." UTAH CODE § 78B-2-108(2).

¶30 Commodity Transporters presents this history and implores us to interpret the current version of the statute consistent with the way the statute read prior to 2008. There are two problems with this approach.

¶31 First, "it is elementary that we do not seek guidance from legislative history and relevant policy considerations when the [language of the] statute is clear and unambiguous." *C.T. ex rel. Taylor v. Johnson*, 1999 UT 35, ¶ 13, 977 P.2d 479. "The reason for such an approach is plain: 'We must be guided by the law as it is. . . . When language is clear and unambiguous, it must be held to mean what it expresses, and no room is left for construction.'" *Salt Lake Child and Fam. Therapy Clinic, Inc. v. Frederick*, 890 P.2d 1017, 1020 (Utah 1995) (quoting *Hanchett v. Burbidge*, 202 P. 377, 379–80 (Utah 1921)); *see also Garfield Cnty. v. United States*, 2017 UT 41, ¶ 15, 424 P.3d 46 ("In general, '[w]here a statute's language is unambiguous and provides a workable result, we need not resort to other interpretive tools, and our analysis ends.'" (alteration in original) (citation omitted)).

¶32 As we explained above, the language of the Tolling Statute is unambiguous. This language must then "be held to

mean what it expresses," and any legislative signals Commodity Transporters perceives to support their interpretation "must yield to the clear and unmistakable language of the [Tolling Statute]." *See Johnson*, 1999 UT 35, ¶ 13.

¶33 Second, the Tolling Statute's legislative history does not undermine our conclusion. The Legislature amended the Tolling Statute less than six months after we interpreted it to condition tolling on the lack of a legal guardian. *See Ellis*, 2007 UT 77, ¶ 31 n.60. As described above, the Legislature removed the reference to a legal guardian from the provision we had relied upon to reach that conclusion. Contrary to Commodity Transporters' assertion, this change seems to suggest that the Legislature deliberately and substantively altered the Tolling Statute.

¶34 We take Commodity Transporters' point that when the bill was presented, two legislators—the bill's House and Senate sponsors no less—opined that the amendment made no substantive changes to the law. But those statements do not reflect the bill's text. And they underscore why "statements of individual legislators 'should not be entitled to any weight' when the statements contradict the plain language of a statute." *State v. Jeffs*, 2011 UT 56, ¶ 28 n.48, 283 P.3d 464 (citation omitted).

¶35 Regardless of what two legislators said when the bill was presented, the Legislature removed the language that Commodity Transporters wants us to read in. We are not at liberty to reinsert that language.

2. The Tolling Statute Is Not Backed by a Single Purpose

¶36 Commodity Transporters' second argument contends that our interpretation of the Tolling Statute flies in the face of the statute's "clear purpose." According to Commodity Transporters, the Tolling Statute exists "to protect and preserve the legal rights of minors and incompetent persons who are otherwise incapable of protecting those rights themselves." As Commodity Transporters' argument goes, interpreting the Tolling Statute to toll a limitations period for a mentally incompetent individual with a legal guardian "would create protection where none is needed."

¶37 Even if we were to find that Commodity Transporters has correctly identified the statute's purpose, we reject Commodity Transporters' suggestion that our interpretation is inaccurate simply because it might call that purpose into question. "As we

have emphasized frequently, '[l]egislation is rarely aimed at advancing a single objective at the expense of all others.'" *Utley v. Mill Man Steel, Inc.*, 2015 UT 75, ¶ 34, 357 P.3d 992 (alteration in original) (quoting *Myers v. Myers*, 2011 UT 65, ¶ 27, 266 P.3d 806). "More often, statutes are a result of legislative give-and-take that balances multiple concerns." *Id.* (citation omitted); *see also Olsen v. Eagle Mountain City*, 2011 UT 10, ¶ 23 n.6, 248 P.3d 465 (recognizing "the peril of interpreting statutes in accordance with presumed legislative purpose, particularly given that most statutes represent a compromise of purposes advanced by competing interest groups, not an unmitigated attempt to stamp out a particular evil").

¶38 The Tolling Statute, like most statutes, is not buttressed by a single, "clear" purpose. It is, instead, "multi-dimensional." *State v. Canton*, 2013 UT 44, ¶ 23, 308 P.3d 517 (rejecting Canton's argument that the State's interpretation of our criminal tolling statute conflicts with the statute's purpose because the statute "implicates other considerations" alongside the one Canton advances). So, while the Tolling Statute is undoubtedly aimed at protecting the vulnerable "from [] strict time restrictions," *O'Neal v. Div. of Fam. Servs.*, 821 P.2d 1139, 1142 (Utah 1991), it is also undoubtedly aimed at addressing other concerns, *see, e.g.*, *Canton*, 2013 UT 44, ¶ 24 ("[O]ur statute of limitations jurisprudence is aimed not only at balancing repose on one hand and an opportunity to prepare a case for filing on the other, but also at fostering certainty and avoiding unfair surprise.").

¶39 Furthermore, while we agree with Commodity Transporters—the purpose of the Tolling Statute is, at least in part, protective—we are not convinced that the Legislature enacted the Tolling Statute to protect only those without legal guardians. We have noted that the "Utah [L]egislature has recognized that the mechanical application of statutorily fixed limitations periods may unjustly penalize people who are unable to bring or maintain an action because of disability." *O'Neal*, 821 P.2d at 1141. "To address this problem, the [L]egislature has provided for the tolling of statutes of limitations during a plaintiff's disability." *Id.*; *see also id.* at 1142 (examining "the policy underlying . . . [t]olling statutes based on mental incompetency" and observing that they "are enacted to relieve from the strict time restrictions people 'who are unable to protect their legal rights because of an overall inability to function in society'" (citation omitted)); *Johnson v. State*, 945 P.2d 673, 674 (Utah 1997)

(explaining that the Tolling Statute was "obviously intended to prevent a person from losing the opportunity to bring a claim where circumstances precluded either proper notice or a realistic effort to pursue the claim"). Indeed, the Tolling Statute—and its previous versions—has been interpreted to toll the statute of limitations for a minor during minority, without regard to whether the minor has a legal guardian.[5]

¶40  In any event, we have repeatedly declined invitations to interpret statutes contrary to their plain language even when a party offers an interpretation that might better advance the Legislature's purpose. *See Olsen*, 2011 UT 10, ¶ 23 ("[T]he City's speculation as to a contrary legislative purpose cannot quash our construction of the plain language."); *VCS, Inc. v. Utah Cmty. Bank*, 2012 UT 89, ¶ 22, 293 P.3d 290 ("Those terms are the law—even when we might find that the policies behind the statute should properly have dictated a different rule."). We accordingly reject Commodity Transporters' argument, finding it out of step with not only the plain language of the Tolling Statute but also the legislative balancing at work behind it.

---

[5] *See, e.g.*, *McBroom v. Child*, 2016 UT 38, ¶ 35, 392 P.3d 835 ("Since Mr. McBroom was a minor at the time of the 1973 Agreement and when his guardian sold his shares in 1975, the statute of limitations did not begin to run on his claim until he reached the age of majority."); *Bonneville Asphalt v. Lab. Comm'n*, 2004 UT App 137, ¶ 17, 91 P.3d 849 (interpreting a prior version of the statute to "conclude that the 'without a legal guardian' provision . . . applies only to mentally incompetent individuals. Accordingly, the [statute of limitations] was tolled with respect to Dakota, regardless of whether his mother would properly be viewed as his legal guardian."); *Smith v. Four Corners Mental Health Ctr., Inc.*, 2003 UT 23, ¶ 38, 70 P.3d 904 ("[T]he statute of limitations did not begin to run during Smith's minority."); *Lee v. Gaufin*, 867 P.2d 572, 589–90 (Utah 1993) (holding that a prior version of the statute tolls the statute of limitations "before the age of majority is reached" and thus acts to "guard the rights of children" that "may be lost through a parent's or another caregiver's neglect, indifference, or abandonment").

3. Our Interpretation of the Tolling Statute Would Not Lead to Absurd Results

¶41 Commodity Transporters next asks us to defy the plain language of the Tolling Statute because applying it would work an absurd result. Commodity Transporters argues that interpreting the Tolling Statute to mean what it says would expose "a potential defendant . . . to a potential claim indefinitely" because "[t]here is no telling when a person may no longer be incompetent."

¶42 Zilleruelo questions the absurdity of this result in the face of the statute's applicability to minors. In his view, if the Legislature intended to toll the statute of limitations until majority, then it cannot be said that the Legislature could not have also intended to toll the statute until competency.

¶43 "Our caselaw recognizes two different interpretive tools concerning absurdity." *Utley*, 2015 UT 75, ¶ 46 (Durrant, C.J., concurring). The first — the absurd consequences canon — applies only to "resolve ambiguities in a statute," whereas the second — the absurdity doctrine — "has nothing to do with resolving ambiguities." *Id.* Instead, the absurdity doctrine applies to "reform unambiguous statutory language" that would otherwise yield an absurd result. *Id.*; *see also Bagley v. Bagley*, 2016 UT 48, ¶ 27, 387 P.3d 1000. Though Commodity Transporters asks us to avoid our interpretation of the Tolling Statute under either the absurd consequences canon or the absurdity doctrine, we apply only the latter, having found the language of the Tolling Statute to be clear and unambiguous.

¶44 The absurdity doctrine is "narrow." *Bagley*, 2016 UT 48, ¶ 28. "One we have described as 'strong medicine, not to be administered lightly.'" *Utley*, 2015 UT 75, ¶ 48 (Durrant, C.J., concurring) (quoting *Cox v. Laycock*, 2015 UT 20, ¶ 71, 345 P.3d 689 (Lee, J., concurring)). Under this doctrine, we read a statute contrary to its plain language when its operation is "so overwhelmingly absurd that no rational legislator could have intended the statute to operate in such a manner." *Id.* "This standard is satisfied only if the legislature could not reasonably have intended the result." *Bagley*, 2016 UT 48, ¶ 28.

¶45 In the present case, the plain language of the Tolling Statute applies to all causes of action unrelated to the recovery of real property, and tolls the statute of limitations on these causes of action for minors and mentally incompetent individuals until

majority or mental competency is reached. Though minority is a fixed period of time and will span, at most, eighteen years, *see* UTAH CODE § 15-2-1 (setting the age of majority as eighteen), we acknowledge that a period of mental incompetency is not fixed and may, in some cases, span a lifetime. But tolling a statute of limitations for that period is not "so overwhelmingly absurd no rational legislator could have intended [it]," *Utley*, 2015 UT 75, ¶ 46 (Durrant, C.J., concurring), particularly in light of the Tolling Statute's protective purpose. *See O'Neal*, 821 P.2d at 1141 ("The Utah Legislature has recognized that the mechanical application of statutorily fixed limitations periods may unjustly penalize people who are unable to bring or maintain an action because of disability. To address this problem, the legislature has provided for the tolling of statutes of limitations during a plaintiff's disability."); *id.* at 1142 ("Tolling statutes based on mental incompetency are enacted to relieve from the strict time restrictions people 'who are unable to protect their legal rights because of an overall inability to function in society.'" (citation omitted)); *Johnson*, 945 P.2d at 674 ("The [Tolling Statute] was obviously intended to prevent a person from losing the opportunity to bring a claim where circumstances precluded either proper notice or a realistic effort to pursue the claim."). To the contrary, we find it entirely reasonable for the Legislature to have written a tolling statute to protect mentally incompetent individuals throughout the entire period of their incompetency. This seems especially so when the Legislature wrote the Tolling Statute to protect minors throughout their minority. *See, e.g.*, *McBroom v. Child*, 2016 UT 38, ¶ 35, 392 P.3d 835 ("Since Mr. McBroom was a minor . . ., the statute of limitations did not begin to run on his claim until he reached the age of majority." (citing UTAH CODE § 78B-2-108)). We therefore decline to employ the absurdity doctrine to modify the Tolling Statute's plain language.

## II. THE 2002 POA DOES NOT RENDER ZILLERUELO MENTALLY COMPETENT AS A MATTER OF LAW

¶46 Commodity Transporters argues that we can affirm the district court's holding on a different ground.[6] Commodity

---

[6] Commodity Transporters correctly asserts that we have recognized that we can affirm on any ground that is apparent from the record. *See, e.g.*, *Dipoma v. McPhie*, 2001 UT 61, ¶ 18, 29

(continued . . .)

Transporters acknowledges that the district court found that there were genuine issues of material fact on the question of whether Zilleruelo was "medically incompetent." But it argues that Zilleruelo was competent as a matter of law because the 2002 POA rendered him competent. To Commodity Transporters, Zilleruelo is "not technically incompetent" because the 2002 POA "ensures that [he] *can* manage his business affairs and protect his legal rights." In other words, Commodity Transporters argues that Zilleruelo was not incompetent because he had designated someone to manage his affairs.

¶47 Commodity Transporters raises an interesting argument. And there is nothing that would have prevented the Legislature from instituting a rule along the lines Commodity Transporters advocates. But it is manifestly apparent that the Legislature did not adopt such a rule.

¶48 Commodity Transporters' argument is nothing more than an alternative attempt to persuade us to read the Tolling Statute against its plain language. The Tolling Statute states that tolling will occur "during the time that an individual is . . . mentally incompetent." UTAH CODE § 78B-2-108(2). This language, as we have explained, conditions tolling on a single requisite: mental incompetency. And by this language, the Legislature has dictated that the statute of limitations is tolled for a person who is mentally incompetent, even if that person has a legal guardian. We would read that language out of the Tolling Statute if we were to accept Commodity Transporters' argument that having someone to manage the plaintiff's affairs—like a legal guardian or someone holding a power of attorney—converts the plaintiff from mentally incompetent to mentally competent.

¶49 We therefore refuse to read the Tolling Statute to condition tolling on the lack of a power of attorney for the same reason we refuse to read the Tolling Statute to condition tolling on the lack of a legal guardian: it would require us to insert

---

P.3d 1225 ("[A]n appellate court may affirm the judgment appealed from 'if it is sustainable on any legal ground or theory apparent on the record, even though such ground or theory differs from that stated by the trial court to be the basis of its ruling or action.'" (citation omitted)).

substantive requirements into the statute's text that do not already exist. We decline Commodity Transporters' invitation to do so.[7]

## CONCLUSION

¶50 We interpret the Tolling Statute to mean what it says: a statute of limitations for causes of action unrelated to the recovery of real property will not run "[d]uring the time that an individual is underage or mentally incompetent." UTAH CODE § 78B-2-108(2). The existence of a legal guardian or preexisting power of attorney has no impact on whether the statute is tolled during the period of incompetency. We reverse the district court's grant of summary judgment to Commodity Transporters and remand for further proceedings.

_____

[7] While we reject Commodity Transporters' contention that the 2002 POA rendered Zilleruelo competent as a matter of law, we leave in place the district court's finding that a genuine dispute of material fact exists as to whether Zilleruelo was mentally incompetent.