2024 UT App 72

# THE UTAH COURT OF APPEALS

SUMMER TATIANA MCKELL AND MICHELLE TISCHNER,
Appellants,
*v.*
ROBERT C. MCKELL,
Appellee.

Opinion
No. 20220315-CA
Filed May 9, 2024

Fourth District Court, Provo Department
The Honorable M. James Brady
No. 210400528

Christopher M. Ault and Chad A. Tengler,
Attorneys for Appellants

Barry N. Johnson, James K. Tracy, J. Jacob Gorringe,
and Bradley C. Johnson, Attorneys for Appellee

JUDGE JOHN D. LUTHY authored this Opinion, in which
JUDGES GREGORY K. ORME and RYAN M. HARRIS concurred.

LUTHY, Judge:

¶1 Summer Tatiana McKell, through her legal guardian
Michelle Tischner, brought suit against Robert C. McKell, her
adoptive father and former legal guardian, for claims related to
sexual abuse he committed against her. Robert[1] moved to
dismiss Summer's claims on the ground that they were
untimely under the relevant statute of limitations. Summer
contended that the limitations period was statutorily tolled
while she was incompetent, until the time of Tischner's

---

1. "Because the parties share the same last name, we use their
given names with no disrespect intended by the apparent
informality." *Rosser v. Rosser*, 2021 UT 71, ¶ 1 n.1, 502 P.3d 294.

appointment as her guardian. Before the district court issued a decision on the motion, our supreme court issued an opinion clarifying that the relevant statute tolls limitations periods throughout a person's incompetency, regardless of whether the person has an appointed guardian. *See Zilleruelo v. Commodity Transporters, Inc.*, 2022 UT 1, ¶ 24, 506 P.3d 509. However, neither party brought this decision to the district court's attention, and the court dismissed Summer's claims on the grounds that the limitations period was not tolled while she had guardians appointed and that the combined time of the guardianships exceeded the limitations period.

¶2 Summer appeals, arguing that the district court improperly dismissed her claims as time-barred. She asserts that, as *Zilleruelo* clarifies, the limitations period was statutorily tolled even when she had guardians. Robert contends that Summer did not preserve this argument and that she invited any error in the court's ruling on timeliness. Alternatively, he asks us to affirm on the ground that Summer did not sufficiently plead incompetence. We reject Robert's preservation argument, we conclude that Summer did not invite the error leading to the dismissal of her claims, and we determine that Summer sufficiently pled incompetence. Accordingly, we conclude that the district court erred in dismissing Summer's claims, and we reverse.

BACKGROUND[2]

*Summer's Birth and Adoption*

¶3 Summer was born in Russia in 1994 and was later brought to Utah by her adoptive mother (Mother). Summer purportedly

---

2. "In reviewing a district court's grant of summary judgment, we view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party and recite the

(continued…)

suffered traumatic injuries at birth that caused "a variety of mental, emotional, and behavioral developmental disabilities, including cognitive impairment." Mother married Robert in 2007, and Robert subsequently adopted Summer.

*Summer's Guardianships and Robert's Criminal Charges*

¶4     In January 2013, after Summer had turned eighteen, Mother and Robert petitioned to be jointly appointed as Summer's limited guardians and conservators. They were appointed as such on February 15, 2013.

¶5     Soon after this appointment, Summer reported that Robert had sexually assaulted her on multiple occasions. Criminal charges were filed against Robert in April 2013. Robert and Mother resigned as Summer's legal guardians and conservators on January 7, 2014.

¶6     Michelle Tischner, Summer's sister, was appointed as Summer's legal guardian on October 2, 2017. In November of that year, Robert pled guilty to four counts of sexual battery for his conduct toward Summer.

*Summer's Complaint and Robert's Motion for Judgment on the Pleadings*

¶7     On April 22, 2021, Summer, through Tischner, brought this suit against Robert. In her complaint, Summer alleged, among other things, that Robert had sexually assaulted her.

¶8     In his answer, Robert asserted as an affirmative defense that Summer's claims were "barred by the applicable statutes of limitations." Robert then filed a motion for judgment on the pleadings, contending that "[t]he four-year statute of limitations

---

facts accordingly." *Ockey v. Club Jam*, 2014 UT App 126, ¶ 2 n.2, 328 P.3d 880 (cleaned up).

governing each of [Summer's] claims [had] expired several years [previously]."

¶9 Summer opposed this motion, arguing that it "ignore[d] the tolling provisions of Utah law that apply to disabled and incapacitated victims like Summer" and that "[b]ecause the statutes of limitation were tolled until Ms. Tischner was appointed guardian, the action was timely filed." Summer pointed to Utah Code section 78B-2-108 (the Tolling Statute), which provides, "During the time that an individual is underage or mentally incompetent, the statute of limitations for a cause of action other than for the recovery of real property may not run." Utah Code § 78B-2-108(2). Summer stated that "[t]he statute of limitations on [her] claims was tolled until the appointment of her guardian" and that "her claims were timely filed within the applicable statutes of limitation" because she "brought this action within four years of" the appointment of Tischner and "the curing of her legal incapacity."

¶10 Robert replied that Summer's complaint did not adequately plead incompetence and that even if it did, Summer's incompetence was cured more than four years prior when Mother became Summer's guardian and conservator.

*Summer's Amended Complaint and Robert's Motion to Dismiss*

¶11 Summer then sought and obtained leave to amend her complaint. Her amended complaint stated that "Robert signed and filed a 'Verified Consent to Conservatorship' wherein he affirmed that . . . 'Summer suffers from a disability that has impeded her ability to progress mentally and intellectually, and on information and belief, has only attained the intellectual age of approximately 12 years, though she is 18 years old.'" It asserted that "Robert and [Mother's] 2013 limited guardianship is *void ab initio* due to fraud upon the court in prosecuting the petition, bad faith, violating public policy against using court-appointed guardianship to accomplish unlawful ends, failing to discharge

obligations or responsibilities, etc." Additionally, it declared that "Summer remained under a disability and was therefore legally incompetent until the appointment of her current limited guardian."

¶12 Robert filed a motion to dismiss Summer's amended complaint. He again argued that Summer's claims were time-barred because "she had a legal guardian in place for well over four years before asserting her sexual assault claims."

¶13 Summer opposed Robert's motion. She reiterated her position that she was incompetent until Tischner's appointment as guardian, and she stated that "at that point the statute of limitations began to run."

¶14 Robert replied by explaining that his calculations as to timeliness included Mother's time as Summer's guardian such that "between [Mother's] and Tischner's guardianships combined, Summer waited too long to assert her sex abuse claims."

*Zilleruelo v. Commodity Transporters, Inc.*

¶15 In January 2022, our supreme court issued an opinion in *Zilleruelo v. Commodity Transporters, Inc.*, 2022 UT 1, 506 P.3d 509, interpreting the Tolling Statute. Therein, the court provided the following analysis:

> The Tolling Statute has two relevant subsections. The first prohibits a mentally incompetent individual from initiating a claim without a legal guardian. With this language—"without a legal guardian"—the Legislature has decreed that a mentally incompetent person cannot bring suit unless that person has a legal guardian.

The second subsection speaks to a different question. It guarantees that a statute of limitations will not run against a mentally incompetent individual during the time that the individual is mentally incompetent. However, the Legislature omitted the language "without a legal guardian" from the second subsection. . . . We presume omissions to be purposeful.

Taking note of this omission and deeming it purposeful, the language of the Tolling Statute is plain. A statute of limitations is tolled during a person's mental incompetency, whether or not that person has a legal guardian.

[The appellee] argues for a reading of the Tolling Statute where the second subsection would parallel the first. In other words, [the appellee] wants us to read the Tolling Statute to provide: "During the time that an individual is underage, or mentally incompetent *and without a legal guardian*, the statute of limitations for a cause of action other than for the recovery of real property may not run." Without a doubt, the Legislature could have written the Tolling Statute in this way. But also without a doubt, it did not. And it is not our job to second guess the Legislature and insert substantive terms into the statute's text.

Simply stated, the Tolling Statute provides that the statute of limitations is tolled while a person is mentally incompetent, whether or not that person is represented by a legal guardian.

*Id.* ¶¶ 20–24 (cleaned up). Neither party brought *Zilleruelo* to the district court's attention.

*Oral Argument and the Ruling on Robert's Motion to Dismiss*

¶16   In February 2022, the district court heard oral argument on Robert's motion to dismiss. During this hearing, Summer's position remained consistent with her earlier statements regarding the effect of her incompetency to toll the statute of limitations until the time of Tischner's guardianship. Summer's counsel stated that "a person does gain competency when there is a guardian that is appointed" and that Summer's "incapacity was cured by the appointment of Michelle Tischner as her guardian." Again, neither party raised *Zilleruelo* at the hearing or in subsequent briefing to the district court.

¶17   In March 2022, the district court granted Robert's motion and dismissed Summer's claims. The court noted that Robert had argued "that the standard for legal incompetency is different than the standard for a disability that would apply to the appointment of a guardian," but the court did not "rule on the parties' argument regarding the differences between competency and disability" because it reasoned that "even assuming that [Summer was] correct that her incapacitation was sufficient to deem her mentally incompetent and that it triggered the tolling of the statute of limitations, the appointment of guardians for her removed the tolling while she had guardians appointed." The court calculated that between Mother and Tischner, Summer "had guardians appointed for a total of four years and 133 days after the alleged sexual assault and before she filed the present lawsuit." Accordingly, the court concluded that Summer's "causes of action [were] barred by the statute of limitations" and dismissed them. Summer now appeals.

ISSUE AND STANDARD OF REVIEW

¶18   Summer argues that the district court erroneously dismissed her claims as time-barred because the Tolling Statute renders them timely. "Because a trial court's grant or denial of a

motion to dismiss is a question of law, the standard of review is correctness." *State v. Arguelles*, 2020 UT App 112, ¶ 6, 473 P.3d 170 (cleaned up).

## ANALYSIS

¶19 Summer asserts that the district court "err[ed] as a matter of law in holding that statutes of limitation for an incompetent person's claims . . . begin to run upon the judicial appointment of a legal guardian." She argues that our supreme court's opinion in *Zilleruelo v. Commodity Transporters, Inc.*, 2022 UT 1, 506 P.3d 509, demands the conclusion that the statute of limitations has been tolled throughout the duration of Summer's alleged ongoing incompetence—regardless of guardianship status—such that her claims were timely. We agree that *Zilleruelo* does demand that conclusion. The holding in *Zilleruelo* clearly establishes that if Summer was incompetent, her claims were not time-barred because the relevant statute of limitations was tolled under the Tolling Statute for the duration of Summer's incompetency, regardless of guardianship status. *See id.* ¶ 24.

¶20 Robert responds not by asserting that the court's legal conclusion on tolling during incompetency or its application of the Tolling Statute were correct but, rather, by contending that Summer's argument on appeal is unavailing because she did not preserve it or argue an exception to preservation and because she invited any error on this point. Robert additionally asserts that we should affirm on the alternative ground that Summer did not sufficiently plead incompetence. We address these contentions in turn.

## I. Preservation

¶21 Robert contends that we should not consider Summer's appeal because Summer failed to preserve the issue of whether "statutes of limitation for an incompetent person's claims . . .

begin to run upon the judicial appointment of a legal guardian." (Omission in original.) In support of this argument, Robert points to caselaw establishing that Utah appellate courts "view issues narrowly" and "recognize that an appellant raises a new issue when the appellant raises a legal theory entirely distinct from the legal theory the appellant raised to the district court." *Ahhmigo, LLC v. Synergy Co. of Utah*, 2022 UT 4, ¶ 18, 506 P.3d 536 (cleaned up).

¶22 We first note that the issue of the impact of the Tolling Statute was before the district court. Robert raised the issue of whether Summer's claims were time-barred in his answer and motion for judgment on the pleadings, and Summer responded by quoting the Tolling Statute and arguing that it rendered her claims timely. Whether we define the issue broadly as the timeliness of Summer's claims or more narrowly as the effect of the Tolling Statute on the timeliness of Summer's claims given her guardianships, these issues were preserved.[3] Either issue was "presented to the trial court in such a way that the trial court ha[d] an opportunity to rule on that issue." *438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶ 51, 99 P.3d 801 (cleaned up). That Summer agreed to an interpretation of the Tolling Statute that was legally incorrect does not change the reality that the court was presented with and ruled on these issues. *See Cottam v. IHC Health Services, Inc.*, 2024 UT App 19, ¶ 18 n.2, 544 P.3d 1051 ("The court was not

---

3. Counsel for Robert stated during oral argument before this court, "The issue in front of the district court was this: Do we, for purposes of Summer's statute of limitations, apply all of the time that she had a legal guardian in place? So do we count both the time that Michelle Tischner was the legal guardian and do we count the time that [Mother] was her legal guardian?" Such a framing is consistent with our conclusion that the district court had an opportunity to rule on the issue of whether Summer's claims were timely under the Tolling Statute in light of her guardianships.

required to hold the [defendants] to their apparent legal concession; it was required to reach its own conclusion on the [legal question presented].”). And once an issue has been raised in the trial court, “new *arguments*” as to that issue, including “citing new authority or cases supporting an issue that was properly preserved,” “do not require an exception to preservation.” *State v. Johnson*, 2017 UT 76, ¶ 14 n.2, 416 P.3d 443. What Summer has done on appeal is to cite a new case—namely, *Zilleruelo*—in support of an issue that was properly preserved—namely, the timeliness of her claims in light of the Tolling Statute and her guardianships.

¶23 We recognize that, as Robert asserts, Summer is relying on appeal on a Tolling Statute theory—that the Tolling Statute tolls the running of the statute of limitations during all of her incompetency, regardless of whether she has a guardian—that is distinguishable from the Tolling Statute theory she relied on below—that the Tolling Statute tolls the running of the statute of limitations for periods during which she was incompetent and without a guardian and that Mother should not be deemed to have been her guardian. However, based on the same considerations that guided our supreme court’s decision in *Patterson v. Patterson*, 2011 UT 68, 266 P.3d 828, we decline to characterize these as entirely distinct legal theories for preservation purposes.

¶24 In *Patterson*, the defendant had asserted below that an existing Utah Supreme Court opinion that arguably controlled the key issue in the case should be either distinguished or overruled. *See id.* ¶ 4. The defendant had failed to bring to the district court’s attention the fact that legislation subsequent to the relevant supreme court opinion had overruled that opinion already. *See id.* ¶¶ 18, 20. The district court determined that the supreme court opinion at issue was controlling, and in reliance on that opinion, it granted partial summary judgment against the defendant. *See id.* ¶ 5.

¶25   On appeal, the defendant asked the supreme court to overrule its prior opinion or, alternatively, to apply the subsequently enacted statute, which the defendant newly argued had itself overruled the prior opinion already. *See id.* ¶ 8. The plaintiff responded by asserting that the prior opinion "remain[ed] good law and should not be overruled." *Id.* He further contended that the subsequent statute had not overruled the prior opinion and that, in any event, the court should not consider the statutory argument because the defendant raised it for the first time on appeal. *See id.*

¶26   The supreme court began its analysis by considering whether the defendant was barred from arguing the applicability of the subsequent statute where he had not cited it in the district court. *Id.* ¶ 10. After explaining the "two primary considerations underlying the [preservation] rule"—"judicial economy and fairness"—the court concluded that the preservation rule did not prevent the defendant from raising on appeal what it deemed to be "controlling legislation." *Id.* ¶¶ 15–16, 18. Simply stated, where the statute was relevant to "a properly preserved issue," the court was "unwilling to disregard controlling authority that [bore] upon the ultimate resolution of [the] case solely because the parties did not raise it below." *Id.* ¶ 18.

¶27   The court acknowledged that its decision might "undermine some of the policies underlying the preservation requirement." *Id.* ¶ 19. Specifically, it said that judicial economy might not be served since the district court "may have ruled in [the defendant's] favor and [the] appeal [may] have been avoided" if the defendant had raised the controlling authority in the district court. *Id.* And it explained that fairness was not being fully served since it was "not entirely fair to characterize the district court's ruling as 'error' because it did not have the statute before it." *Id.* But the court emphasized that there were "other important [policy] considerations that cut against application of the preservation rule in [that] situation." *Id.* ¶ 20.

¶28   First, the court noted that consideration of the controlling statute was "necessary to a proper decision" and that "[a]s the state's highest court, [it has] a responsibility to maintain a sound and uniform body of precedent and must apply the statutes duly enacted into law." *Id.* Second, the court observed that "the issue of whether and how" the statute applied was "one that [could] be resolved purely as a matter of law." *Id.* Third, the court then pointed out that the defendant's "failure to raise the argument below appear[ed] to have been inadvertent, rather than tactical, because [the court could] conceive of no way in which [the defendant] would [have] derive[d] an advantage from reserving the statutory argument for appeal rather than raising it in the district court." *Id.* Finally, the court highlighted the parties' "ethical obligation to disclose adverse authority to the court," explaining, "[T]he failure to raise the controlling statute in the district court is a failure that can be appropriately assigned to counsel for both parties. Were we to refuse to apply the [controlling statute] here, it could incentivize attorneys to disregard their ethical obligation to point out controlling adverse authority." *Id.*

¶29   Almost all of these important policy considerations that cut against application of the preservation rule in *Patterson* likewise cut against application of the preservation rule here. As an initial matter, where newly cited authority is relevant to a narrow, preserved issue, we, like the *Patterson* court, are "unwilling to disregard controlling authority that bears upon the ultimate resolution of [the] case solely because the parties did not raise it below." *Id.* ¶ 18. Additionally, the impact of the Tolling Statute here "can be resolved purely as a matter of law." *Id.* ¶ 20. Moreover, Summer's "failure to raise the [*Zilleruelo*] argument below appears to have been inadvertent, rather than tactical, because we can conceive of no way in which [Summer] would derive an advantage from reserving [this] argument for appeal rather than raising it in the district court." *Id.* Finally, because both parties had "an ethical obligation to disclose adverse authority to the court," "the failure to raise [*Zilleruelo*] in the district court is a

failure that can be appropriately assigned to counsel for both parties." *Id.* And like our supreme court, we have no desire to "incentivize attorneys to disregard their ethical obligation to point out controlling adverse authority."[4] *Id.*

¶30 Admittedly, the distance between the argument made in the district court in *Patterson* (that prior precedent should be overruled) and the alternative argument made on appeal in *Patterson* (that prior precedent had already been statutorily overruled) was less than the distance between Summer's argument below (that Mother should not be deemed to have been Summer's guardian) and Summer's argument on appeal (that it does not matter whether Summer had a guardian as long as Summer was mentally incompetent). But as close cases like this one reveal, there is no bright line between a *new argument* and an *entirely distinct legal theory*. Therefore, we have been counseled "to look at the underlying policies to determine whether new arguments are actually entirely new issues." *State v. Johnson*, 2017

---

4. The only *Patterson* policy consideration not applicable here is the responsibility of appellate courts to "maintain a sound and uniform body of precedent," which cannot be done if an appellate court is required "to issue an opinion in contravention of" controlling authority. *Patterson v. Patterson*, 2011 UT 68, ¶ 20, 266 P.3d 828. This was an active consideration in *Patterson* because the defendant there made alternative arguments on appeal, which required the supreme court to address the merits of the key issue in any event. *See id.* ¶ 8. In contrast here, Summer's appellate argument is based solely on *Zilleruelo v. Commodity Transporters, Inc.*, 2022 UT 1, 506 P.3d 509. Thus, if we were to determine that her argument was precluded by the preservation rule, we could simply affirm the district court's decision without reaching the merits of the timeliness issue and thereby avoid issuing an opinion in contravention of controlling authority. We are not convinced, however, that the inapplicability here of this one policy consideration compels a different conclusion as to preservation.

UT 76, ¶ 14 n.2, 416 P.3d 443. That is what we have done here. And in light of the policy considerations identified above, we conclude that Summer's reliance on *Zilleruelo* does not present an entirely new issue but, rather, a new argument under the narrow, preserved issue of whether her claims were timely in light of the Tolling Statute and her guardianships. We therefore reject Robert's argument that our preservation doctrine prevents us from considering the applicability of *Zilleruelo*.

## II. Invited Error

¶31    Robert also argues that Summer invited any error in the district court's ruling related to the Tolling Statute because she affirmatively represented to the court "the very legal principle she now challenges on appeal." We disagree and conclude that the invited error doctrine is inapplicable here.

¶32    "Under the doctrine of invited error, an error is invited when counsel encourages the trial court to make an erroneous ruling." *State v. Popp*, 2019 UT App 173, ¶ 23, 453 P.3d 657 (cleaned up), *cert. denied*, 485 P.3d 943 (Utah 2021). "To invite an error, a party must do more than simply fail to object; the party must manifest some sort of affirmative representation to the trial court that the court is proceeding appropriately." *Id.*

> Application of the invited error doctrine serves three important purposes. First, it discourages parties from intentionally misleading the trial court so as to preserve a hidden ground for reversal on appeal. Second, it encourages counsel to actively participate in all proceedings and to raise any possible error at the time of its occurrence. Finally, it fortifies our long-established policy that the district court should have the first opportunity to address a claim of error.

*State v. Moa*, 2012 UT 28, ¶ 25, 282 P.3d 985 (cleaned up).

¶33 There is no denying that Summer's counsel stated to the court that "a person does gain competency when there is a guardian that is appointed"; this statement conceded a legal rule that was wrong, which the district court erroneously applied when it determined that "the appointment of guardians for [Summer, including Mother,] removed the tolling" of the relevant statute of limitations. However, Summer never encouraged the court's ultimate decision dismissing her claims as untimely under the Tolling Statute. Nor did she affirmatively represent that the district court was "proceeding appropriately" by dismissing her claims. *Popp*, 2019 UT App 173, ¶ 23. To the contrary, Summer steadfastly maintained that her claims were timely under the Tolling Statute by adamantly denying that Mother's guardianship cured her incompetency.

¶34 Moreover, Summer's actions in the district court fulfilled the first purpose of the invited error doctrine and at least partially fulfilled its second purpose. Specifically, there is no indication that Summer intentionally misled the trial court where, as we have already observed, there was no way in which she would have derived an advantage by waiting to raise *Zilleruelo* until appeal. And her counsel was actively participating in the proceedings and raised the possible error he perceived at the time of its occurrence.

¶35 We acknowledge that a decision to not apply the invited error doctrine in this circumstance may undermine the other purposes of the doctrine, including to encourage counsel to raise any possible error at the time of its occurrence and to thereby fortify the "long-established policy that the district court should have the first opportunity to address a claim of error," *Moa*, 2012 UT 28, ¶ 25 (cleaned up)—the identical judicial economy purposes that undergird the preservation rule, *see Patterson v. Patterson*, 2011 UT 68, ¶ 15, 266 P.3d 828. However, the same important counter-considerations that led us to not apply the preservation rule in this situation, *see supra* ¶ 29, also lead us to not apply the invited error doctrine in this situation. Much like we said with

regard to preservation, "we are unwilling to disregard controlling authority that bears upon the ultimate resolution of a case solely because the parties did not [discover] it below," *Patterson*, 2011 UT 68, ¶ 18, and, thus, agreed to a misstatement of the law. Instead, we hold that the invited error doctrine does not apply when, as here, there is controlling authority that counsel for both sides—as well as the trial court—wholly failed to recognize and the appealing party did not acquiesce in the ultimate decision that is rendered erroneous by that controlling authority. In such circumstances, only an affirmative disavowal of the controlling authority itself will constitute invited error.

### III. Sufficiency of Pleadings Regarding Incompetence

¶36 Finally, Robert argues that we should "affirm on the alternate ground that the [a]mended [c]omplaint fails to allege that Summer is mentally incompetent, which means that her claims are barred by the statute of limitations." Robert asserts that the threshold for a person to be deemed "mentally incompetent" for purposes of the Tolling Statute is a high bar that Summer failed to sufficiently plead.

¶37 Our supreme court has explained that "tolling statutes based on mental incompetency are enacted to relieve from the strict time restrictions people who are unable to protect their legal rights because of an overall inability to function in society." *O'Neal v. Division of Family Services*, 821 P.2d 1139, 1142 (Utah 1991) (cleaned up). "Courts generally hold that a person is incompetent for the purposes of a provision tolling a statute of limitations when the disability is of such a nature to show him or her unable to manage his or her business affairs or estate, or to comprehend his or her legal rights or liabilities." *Id.* (cleaned up).

¶38 Summer's amended complaint alleged that "Robert signed and filed a 'Verified Consent to Conservatorship' wherein he affirmed that . . . 'Summer suffers from a disability that has

impeded her ability to progress mentally and intellectually, and on information and belief, has only attained the intellectual age of approximately 12 years, though she is 18 years old.'" The amended complaint also alleged that "Summer remained under a disability and was therefore legally incompetent until the appointment of her current limited guardian." Additionally, in both her original complaint and her amended complaint, Summer alleged that she "suffers from a variety of mental, emotional, and behavioral developmental disabilities, including cognitive impairment" due to her birth injuries and that "she has profound difficulties in seeking out and processing information on her own." These allegations are more than sufficient to survive a motion to dismiss on the issue of mental incompetency under the Tolling Statute.

¶39     Of particular relevance are the allegations that, although of an adult age, Summer had attained the intellectual age of only a twelve-year-old and that she suffers from mental disabilities and cognitive impairment that make it profoundly difficult for her to seek out and process information. These allegations and permissible inferences that can be drawn from them paint a picture of someone who is unable to manage her own business affairs and to comprehend or protect her legal rights because of an overall inability to function in society. *See generally Alpine Homes, Inc. v. City of West Jordan*, 2017 UT 45, ¶ 7 n.2, 424 P.3d 95 ("In determining whether a lawsuit survives a motion to dismiss, we assume that the factual allegations in the complaint are true and we draw all reasonable inferences in the light most favorable to the plaintiff." (cleaned up)). Indeed, where the Tolling Statute operates to relieve from the strict time restrictions of applicable statutes of limitation a person who is actually twelve years old, we find it difficult to conclude that the Tolling Statute would not similarly relieve an adult with the mental capacity of a twelve-year-old. Accordingly, we do not affirm on this alternative ground.

CONCLUSION

¶40    *Zilleruelo* clarifies that the Tolling Statute applies during the duration of a person's incompetency, regardless of guardianship status. *See Zilleruelo v. Commodity Transporters, Inc.*, 2022 UT 1, ¶ 24, 506 P.3d 509. Summer's claims were therefore timely filed. Because we decline to conclude that this issue was unpreserved, to apply the doctrine of invited error, or to affirm on the alternative ground that Summer failed to sufficiently plead her incompetence, we reverse the district court's decision and remand this matter to the district court for further proceedings consistent with this opinion.

_____