**2022 UT 16**

IN THE

## SUPREME COURT OF THE STATE OF UTAH

STATE OF UTAH,
*Appellee*,

*v.*

STEVEN DOUGLAS THURMAN,
*Appellant*.

No. 20200651
Heard February 7, 2022
Filed March 31, 2022

On Direct Appeal

Third District Court, Salt Lake City
The Honorable Paul B. Parker
No. 911900907

Attorneys:

Daniel L. Day, Asst. Solic. Gen., Sean D. Reyes, Att'y Gen., Brett Keeler, Salt Lake City, for appellee

Elizabeth Hunt, Salt Lake City, for appellant

CHIEF JUSTICE DURRANT authored the opinion of the Court in which JUSTICE PEARCE, JUSTICE PETERSEN, JUDGE BROWN, and JUDGE HOWELL joined.

Having recused themselves, ASSOCIATE CHIEF JUSTICE LEE and JUSTICE HIMONAS do not participate herein; DISTRICT JUDGE JENNIFER A. BROWN and DISTRICT JUDGE ANTHONY L. HOWELL sat.

CHIEF JUSTICE DURRANT, opinion of the Court:

### Introduction

¶1 Following his divorce, Steven Thurman planted a pipe bomb in the car of his ex-wife's new boyfriend. The bomb exploded and killed the boyfriend's eleven-year-old son. Mr. Thurman was charged with aggravated murder, a capital offense, and other counts related to making and transporting a bomb. He negotiated a deal with prosecutors under which he pled guilty to depraved

indifference murder in exchange for the prosecution's agreement to drop all other counts against him and make several favorable recommendations to the Utah Board of Pardons and Parole (Board). Now, over twenty-three years later, he remains imprisoned and argues that the prosecution failed to fulfill its end of the plea agreement.

¶2    But before this court can consider the merits of Mr. Thurman's claim, we must address the manner in which it was brought. Mr. Thurman brought this claim as a motion under Utah Rule of Civil Procedure 60(b), or alternatively, as a motion for a misplea, contending that he has no other avenue available for relief. The State argued below, and the district court agreed, that Utah Code section 77-13-6 (Plea Withdrawal Statute) mandates that Mr. Thurman's claim be brought under the Post-Conviction Remedies Act (PCRA), which provides Mr. Thurman with an avenue for relief.

¶3    Looking to the plain language of the Plea Withdrawal Statute and the PCRA, we agree with the State that Mr. Thurman's claim must be brought under the PCRA. Because his constitutional challenge to his guilty plea can properly be considered only under the PCRA, we affirm the district court's dismissal of Mr. Thurman's motion.

**Background**

¶4    In 1991, Mr. Thurman placed a pipe bomb under the seat of the car of his ex-wife's new boyfriend. The bomb detonated a few days later, killing the boyfriend's eleven-year-old son. After finding evidence tying Mr. Thurman to the bomb, the State arrested him and charged him with capital murder and other charges related to the construction and transportation of a bomb.

¶5    Mr. Thurman initially pled guilty to aggravated murder in exchange for the prosecution's agreement not to seek the death penalty and to dismiss the other counts. But after being sentenced to life in prison with the possibility of parole, he moved to withdraw his guilty plea. The trial court denied Mr. Thurman's motion, but we reversed the denial in *State v. Thurman*, holding that the facts to which Mr. Thurman had pled were insufficient to show the mental state necessary for an aggravated murder conviction.[1]

---

[1] 911 P.2d 371, 375 (Utah 1996).

¶6 Following the withdrawal of his initial guilty plea, Mr. Thurman reached a new plea agreement with the prosecution, pleading guilty to depraved indifference murder on July 13, 1998. The plea agreement included four guarantees from the State:

> (1) State agrees to dismiss the remaining counts.
> (2) State agrees to affirmatively recommend and stipulate that [the trial court] recommend to the Board of Pardons and Parole that defendant receive credit for time served from his arrest on May 17, 1991. (3) State agrees to affirmatively recommend to the Board of Pardons and Parole that defendant's case be reviewed and considered for a parole hearing as soon as possible, given the fact that defendant has been incarcerated for more than seven (7) years. [A]nd (4) State agrees to recommend to the Board of Pardons and Parole that defendant's attorneys be allowed to represent him at all parole hearings, at the discretion of defendant's attorneys.

¶7 Mr. Thurman was sentenced to an indefinite term of five years to life in prison. His presentencing report included recommendations from the prosecution that he be sentenced to an indefinite term of five years to life and receive credit for time served, but it did not include a recommendation that his case be reviewed and considered for a parole hearing as soon as possible or a recommendation to allow his attorneys to represent him at any parole hearings.

¶8 Seven months after sentencing, Mr. Thurman had his first parole hearing. And while the Board acknowledged that his first parole hearing was taking place quicker than normal, they explained this was because of an "administrative rule change" and did not mention a recommendation from the prosecutors. Additionally, one of the Board members reported that the Board had received a fax from Mr. Thurman's defense attorneys stating they would have attended the hearing but did not receive enough notice. The Board chose not to grant Mr. Thurman parole and scheduled his next parole hearing for 2011. At the 2011 hearing, the Board "determined that [Mr.] Thurman would serve the remainder of his life in prison."

¶9 Following the 2011 hearing, Mr. Thurman "moved to correct an illegal sentence under Utah Rule of Criminal Procedure 22(e), alleging that the Board of Pardons and Parole 'illegally sentenced [Mr. Thurman] to life without possibility of parole' and that the pleaded facts in his guilty plea did not support a second-degree

murder conviction."[2] The district court denied Mr. Thurman's motion, and the court of appeals affirmed.[3]

¶10 At this point, Mr. Thurman hired new counsel to work on his case. Working with new counsel, Mr. Thurman began to suspect that the prosecutors on his case had not made all of the recommendations to the Board that were part of his plea agreement. Following this discovery, Mr. Thurman filed a petition for post-conviction relief under the PCRA, alleging prosecutorial breach following his plea agreement. A couple of months after filing the PCRA petition, Mr. Thurman also filed the motion we are considering today, seeking relief under Utah Rule of Civil Procedure 60(b), or alternatively, declaration of a misplea. The district court placed Mr. Thurman's PCRA petition on hold pending the outcome of this rule 60(b) and misplea motion.

¶11 The district court dismissed Mr. Thurman's rule 60(b) and misplea motion, holding that he was required to bring any challenge to his guilty plea under the PCRA. Specifically, the court held that Mr. Thurman's claim of prosecutorial breach of his plea agreement fell within Utah Code subsection 77-13-6(2)(c)'s requirement that "[a]ny challenge to a guilty plea not made within the time period specified in Subsection (2)(b) shall be pursued under Title 78B, Chapter 9, Postconviction Remedies Act, and Rule 65C, Utah Rules of Civil Procedure." The court rejected Mr. Thurman's argument that the PCRA did not provide him with a remedy, stating that "[c]ertainly, the language of 78B-9-104 is broad enough to include defendant's claims." The court also dismissed Mr. Thurman's rule 60(b) and misplea motion on the alternative grounds that it was not "filed within a reasonable time" and that a "balancing of interests weighs against a finding of legal necessity that is required for a misplea."

¶12 Mr. Thurman filed an appeal, arguing that the district court erred in dismissing his motion. We have appellate jurisdiction under Utah Code section 78A-3-102(3)(i).

**Standard of Review**

¶13 Mr. Thurman disputes the district court's interpretation of the Plea Withdrawal Statute and the PCRA. "We review questions of

---

[2] (Alteration in original.) (Citation omitted.)

[3] *See State v. Thurman*, 2014 UT App 119, ¶ 1 , 327 P.3d 1240.

statutory interpretation for correctness, affording no deference to the district court's legal conclusions."[4] Because we hold that Mr. Thurman's challenge to his guilty plea must be brought under the PCRA, we do not reach the district court's alternative grounds for dismissal.

**Analysis**

¶14 Mr. Thurman argues that a rule 60(b) motion or motion for a misplea is appropriate in this case because no other avenue for relief exists. To reach this conclusion, he contends that (1) the violation he is alleging falls outside the Plea Withdrawal Statute's requirement that "[a]ny challenge to a guilty plea" not made prior to the announcement of sentencing be brought under the PCRA and (2) the PCRA does not allow for claims based on prosecutorial breaches of plea agreements.

¶15 First, Mr. Thurman's interpretation of the Plea Withdrawal Statute conflicts with the broad language used in Utah Code subsection 77-13-6(2)(c). He relies on limitations from a separate part of the statute, subsection 77-13-6(2)(a), but we cannot import a limitation from one part of the statute to another when the Legislature chose not to do so. The plain language of the Plea Withdrawal Statute unambiguously requires Mr. Thurman's claim to be brought under the PCRA.

¶16 Second, Mr. Thurman reads the grounds for relief available under the PCRA more narrowly than they are written. He argues that the PCRA does not provide him with an avenue for relief because his guilty plea was "knowing and voluntary." But the PCRA does not require that petitions be based on an unknowing or involuntary plea. Utah Code subsection 78B-9-104(1)(a) allows for petitions when "the conviction was obtained . . . in violation of the United States Constitution or Utah Constitution." And this is the foundation of Mr. Thurman's claim—that his conviction was obtained in violation of his constitutional right to due process.

I.   The Plea Withdrawal Statute Requires that Mr. Thurman's Claim Be Brought Under the PCRA

¶17 The Plea Withdrawal Statute sets out how defendants can withdraw or challenge guilty pleas. It is a jurisdictional statute and

---

[4] *Marion Energy, Inc. v. KFJ Ranch P'ship*, 2011 UT 50, ¶ 12, 267 P.3d 863 (citation omitted).

limits the courts' abilities to hear both withdrawals of and challenges to guilty pleas.[5] Mr. Thurman argues that his claim, alleging prosecutorial breach of his plea agreement, falls outside of the statute's reach. But looking to the plain language of Utah Code subsection 77-13-6(2)(c), we conclude that Mr. Thurman must bring his claim under the PCRA.

¶18 "It is well settled that when faced with a question of statutory interpretation, 'our primary goal is to evince the true intent and purpose of the Legislature.'"[6] And "[t]he best evidence of the legislature's intent is the plain language of the statute itself."[7] So "[w]hen interpreting a statute, we assume, absent a contrary indication, that the legislature used each term advisedly according to its ordinary and usually accepted meaning."[8] And just as we presume each term was used advisedly, we "presum[e] all omissions to be purposeful."[9]

¶19 We start our analysis by looking to the text of the Plea Withdrawal Statute. It states in full:

> (1) A plea of not guilty may be withdrawn at any time prior to conviction.
>
> (2)(a) A plea of guilty or no contest may be withdrawn only upon leave of the court and a showing that it was not knowingly and voluntarily made.
>
> (b) A request to withdraw a plea of guilty or no contest, except for a plea held in abeyance, shall be made by

---

[5] *See State v. Rettig*, 2017 UT 83, ¶ 27, 416 P.3d 520 ("The standard set forth in the Plea Withdrawal Statute is *both* a rule of preservation and a jurisdictional bar on appellate consideration of matters not properly preserved.").

[6] *Zilleruelo v. Commodity Transporters, Inc.*, 2022 UT 1, ¶ 18, _ P.3d _ (quoting *Marion Energy, Inc. v. KFJ Ranch P'ship*, 2011 UT 50, ¶ 14, 267 P.3d 863).

[7] *Marion Energy, Inc.*, 2011 UT 50, ¶ 14 (citation omitted) (internal quotation marks omitted).

[8] *Id.* (alteration in original) (citation omitted).

[9] *Bagley v. Bagley*, 2016 UT 48, ¶ 10, 387 P.3d 1000 (citation omitted).

motion before sentence is announced. Sentence may not be announced unless the motion is denied. For a plea held in abeyance, a motion to withdraw the plea shall be made within 30 days of pleading guilty or no contest.

(c) Any challenge to a guilty plea not made within the time period specified in Subsection (2)(b) shall be pursued under Title 78B, Chapter 9, Postconviction Remedies Act, and Rule 65C, Utah Rules of Civil Procedure.[10]

¶20  Relying on the statute as a whole, Mr. Thurman argues that subsection (c)'s reference to "[a]ny challenge to a guilty plea not made within the time period specified in Subsection (2)(b)" actually only refers to attempts to challenge or withdraw a plea based on "a showing that it was not knowingly and voluntarily made." But that language comes from subsection (2)(a), and the Legislature chose not to include any such limiting language in subsection (2)(c). Rather, the Legislature referred to "*[a]ny* challenge to a guilty plea."[11] "Without a doubt, the Legislature could have written the [Plea Withdrawal] Statute" to apply only to pleas that were not knowing or voluntary in nature.[12] "But also without a doubt, it did not. And it is not our job to second guess the Legislature and insert substantive terms into the statute's text."[13]

¶21  Mr. Thurman's proposed interpretation of the statute would also conflict with our previous decisions, where we have recognized that "the term 'any' support[s] a broad reading of 'any challenge.'"[14] For example, in *State v. Badikyan*, we declined to limit the meaning of "any challenge to a guilty plea" to untimely requests to withdraw guilty pleas because that "would reduce the scope of the Plea Withdrawal Statute to less than 'any.'"[15] And in *State v. Flora*, we concluded that "by modifying 'challenge' with the adjective 'any,'

---

[10] UTAH CODE § 77-13-6.

[11] *Id.* § 77-13-6(2)(c) (emphasis added).

[12] *Zilleruelo*, 2022 UT 1, ¶ 23.

[13] *Id.*

[14] *State v. Badikyan*, 2020 UT 3, ¶ 30, 459 P.3d 967.

[15] *Id.* ¶¶ 24, 32.

the legislature necessarily recognized that a defendant might raise any number of specific plea challenges."[16]

¶22 The language of subsection (c) is unambiguous, so we need not look for other indicators of its meaning. The only question this leaves is whether or not Mr. Thurman's current motion is properly characterized as a challenge to his guilty plea. A challenge is "a calling to account or into question"[17] or "[a]n act or instance of formally questioning the legality or legal qualifications of a person, action, or thing."[18] Mr. Thurman's motion fits within these definitions.

¶23 Mr. Thurman is calling his guilty plea into question by arguing that his constitutional right to due process was violated when the prosecution breached the plea agreement that induced his plea. His motion is framed around the United States Supreme Court's holding in *Santobello v. New York* that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled."[19] According to Mr. Thurman, like in *Santobello*, the prosecution in his case failed to follow through with the promises that induced his guilty plea. And while the *Santobello* Court contemplated either specific performance by the prosecution of agreed upon terms in a plea agreement or withdrawal of a plea as possible remedies,[20] due to the passage of time, Mr. Thurman seeks only "to be released from his part of the agreement, his guilty plea."

¶24 By seeking his release from his guilty plea, or the declaration of a misplea, Mr. Thurman's motion constitutes a challenge to his guilty plea. Although his challenge is based on a different ground than the reason for withdrawal of a guilty plea contemplated in Utah Code subsection 77-13-6(2)(a), which requires a showing that a guilty plea "was not knowingly and voluntarily

---

[16] 2020 UT 2, ¶ 22, 459 P.3d 975 (internal quotation marks omitted).

[17] *Challenge*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/challenge (last visited Mar. 21, 2022).

[18] *Challenge*, BLACK'S LAW DICTIONARY (11th ed. 2019).

[19] 404 U.S. 257, 262 (1971).

[20] *Id.* at 263.

made," it still falls within the broader scope of subsection (c), which refers to "[*a*]*ny* challenge to a guilty plea."[21] Both parts of Mr. Thurman's motion, his arguments rooted in Utah Rule of Civil Procedure 60(b) and his motion for declaration of a misplea, are challenges to his guilty plea. So his claim must be brought under the PCRA.

¶25 Because the Plea Withdrawal Statute is jurisdictional, this could be the end of our analysis. Mr. Thurman's claim may only be brought through the PCRA, so the district court lacked jurisdiction over this motion and was correct to dismiss it.[22] But Mr. Thurman additionally argues that the jurisdictional limits of the Plea Withdrawal Statute cannot apply to *Santobello* claims because the PCRA provides no avenue for relief. We disagree.

II. The PCRA Provides an Avenue for Relief for *Santobello* Claims

¶26 In addition to disputing the meaning of the Plea Withdrawal Statute, Mr. Thurman argues that the PCRA provides no ground for relief for his *Santobello* claim. Mr. Thurman's argument centers on *State v. Kay* and *Puckett v. United States*, two cases holding that subsequent breaches by the prosecution of plea agreements do not render guilty pleas unknowing or involuntary.[23] But Mr. Thurman's focus on the knowing and voluntary nature of his guilty plea is misplaced, because the PCRA does not include any such limitation. Mr. Thurman can file a petition under the PCRA based on a claim

---

[21] UTAH CODE § 77-13-6(2)(c) (emphasis added).

[22] *See State v. Ott*, 2010 UT 1, ¶ 18, 247 P.3d 344 ("[F]ailure to withdraw a guilty plea within the time frame dictated by section 77–13–6 deprives the trial court and appellate courts of jurisdiction to review the validity of the plea."); *Gailey v. State*, 2016 UT 35, ¶ 20, 379 P.3d 1278 ("[A] defendant may not file a motion to withdraw a guilty plea or directly appeal the plea, but must pursue postconviction relief through the PCRA and rule 65C of the Utah Rules of Civil Procedure.").

[23] *Kay*, 717 P.2d 1294, 1301 (Utah 1986) ("The mere fact that Kay pleaded guilty to avoid a harsher penalty does not render an otherwise valid plea involuntary."); *Puckett*, 556 U.S. 129, 137 (2009) ("[T]here is nothing to support the proposition that the Government's breach of a plea agreement retroactively causes the defendant's agreement to have been unknowing or involuntary.").

that his conviction was obtained in violation of his due process rights.

¶27 As discussed above, "[w]hen interpreting statutes, we look first to the plain language of the statute, and give effect to that language unless it is ambiguous."[24] "In so doing, [w]e presume that the legislature used each word advisedly. We also presume[] that the expression of one [term] should be interpreted as the exclusion of another[,] . . . [thereby] presuming all omissions to be purposeful."[25]

¶28 Under the PCRA, "an individual who has been convicted and sentenced for a criminal offense may file an action in the district court of original jurisdiction for postconviction relief to vacate or modify the conviction or sentence" on the ground that "the conviction was obtained . . . in violation of the United States Constitution or Utah Constitution."[26] We have previously interpreted this language as "appl[ying] where the conviction or sentence was unconstitutional at the time it was handed down."[27]

¶29 Mr. Thurman argues that his claim does not fit within this category because the alleged constitutional violation did not take place until after his conviction was obtained. He contends that his due process rights were violated when the prosecution failed to follow through with promises that induced his guilty plea. Specifically, he claims that the prosecution breached the plea agreement by failing to recommend to the Board that he have a parole hearing as soon as possible and that his defense attorneys be allowed to attend that hearing. According to Mr. Thurman, the timing of the prosecution's acts, or failure to act, takes his claim out of the PCRA.

¶30 But even if the prosecution had not yet violated the plea agreement at the time Mr. Thurman entered his guilty plea, his guilty plea was still induced by promises that he alleges were empty. It was these promises that led to his guilty plea and conviction. So the alleged due process violation, the prosecution's breach of the

---

[24] *Salt Lake Cnty. v. Holliday Water Co.*, 2010 UT 45, ¶ 27, 234 P.3d 1105 (citation omitted) (internal quotation marks omitted).

[25] *Bagley v. Bagley*, 2016 UT 48, ¶ 10, 387 P.3d 1000 (alterations in original) (citations omitted) (internal quotation marks omitted).

[26] UTAH CODE § 78B-9-104(1)(a).

[27] *Archuleta v. State*, 2020 UT 62, ¶ 25, 472 P.3d 950.

plea agreement, is directly tied to the manner in which his conviction was obtained. Because his claim is based on the promises that induced his guilty plea and led to his conviction, it is properly considered a claim that his "conviction was obtained . . . in violation of the United States Constitution or Utah Constitution."[28]

¶31   Accordingly, Mr. Thurman's *Santobello* claim fits within the plain language of the PCRA.[29] He may file a petition under the PCRA based on his *Santobello* claim, as he already has, whether or not his guilty plea was knowing and voluntary.

**Conclusion**

¶32   The Plea Withdrawal Statute requires all challenges to guilty pleas made outside of the statute's framework be brought under the PCRA. The plain language of the statute incorporates "[a]ny challenge to a guilty plea," and this jurisdictional limitation goes beyond pleas that were not entered knowingly or voluntarily. Mr. Thurman must bring his challenge to his guilty plea under the PCRA, which allows for claims that a conviction was obtained unconstitutionally. Because Mr. Thurman's claim should have been

---

[28] UTAH CODE § 78B-9-104(1)(a).

[29] Even were we to assume some ambiguity as to whether the language of subsection 78B-9-104(1)(a) allows for a PCRA petition based on a *Santobello* violation, our conclusion would be the same based on the application of the statutory canon of constitutional avoidance. "Under the canon of constitutional avoidance, courts may reject[] one of two plausible constructions of a statute on the ground that it would raise grave doubts as to [the statute's] constitutionality." *Castro v. Lemus*, 2019 UT 71, ¶ 54, 456 P.3d 750 (alterations in original) (citation omitted) (internal quotation marks omitted). We apply the canon based "on the reasonable presumption that where there is more than one plausible interpretation of a statute, the legislature did not intend the [interpretation] which raises serious constitutional doubts." *State v. Garcia*, 2017 UT 53, ¶ 59, 424 P.3d 171 (alteration in original) (citation omitted) (internal quotation marks omitted). Here, applying the canon of constitutional avoidance to the relationship between the Plea Withdrawal Statute and the PCRA, we would presume that the Legislature did not intend to leave individuals with no remedy for a due process violation. Any other interpretation would raise grave doubts as to the Plea Withdrawal Statute's constitutionality.

brought under the PCRA, we affirm the district court's dismissal of his rule 60(b) and misplea motion.

———————