**2024 UT App 50**

# THE UTAH COURT OF APPEALS

M. SQUARED ENTERPRISES, INC.,
Appellant,
*v.*
ST. GEORGE CITY,
Appellee.

Opinion
No. 20220101-CA
Filed April 11, 2024

Fifth District Court, St. George Department
The Honorable Keith C. Barnes
No. 210500128

Phillip W. Dyer and Benjamin R. Dyer,
Attorneys for Appellant

Bryan J. Pattison and Tani Pack Downing,
Attorneys for Appellee

JUDGE GREGORY K. ORME authored this Opinion, in which
JUDGES JOHN D. LUTHY and AMY J. OLIVER concurred.

ORME, Judge:

¶1     The sole question presented in this appeal is whether the plain language of section 10-8-41.6 of the Utah Code allows St. George City (the City) to prohibit the operation of a retail tobacco specialty business (sometimes, RTSB). M. Squared Enterprises, Inc. dba St. George City Vapor Company (M Squared) applied for an RTSB license. The City denied the application based solely on its prohibition, pursuant to ordinance, of the operation of RTSBs within city limits. M Squared appealed, and the administrative hearing officer (the AHO) upheld the City's decision. M Squared appealed to the district court, which in turn affirmed the decision of the AHO. And now, M Squared appeals the district court's decision. Because the district court's

interpretation of section 10-8-41.6 was correct, we affirm the court's decision.

## BACKGROUND

¶2 In 2012, the City adopted section 3-9-4 of its city code (the Ordinance), which expressly prohibits the operation of an RTSB within the City. *See* St. George, Utah, Code § 3-9-4 (2023). Close to a decade later, M Squared applied for an RTSB license from the City, describing itself as "a high class tobacco retail business, offering high quality cigars, pipe tobacco, vapor products, cbd, kratom, etc." The City denied M Squared's application.

¶3 M Squared appealed, primarily based on the pivotal question of whether the City could outright prohibit the operation of RTSBs under section 10-8-41.6 of the Utah Code. The AHO upheld the City's decision.

¶4 Dissatisfied, M Squared appealed to the district court, arguing that a plain reading of section 10-8-41.6 afforded a municipality the ability to regulate, but not to absolutely prohibit, the operation of RTSBs. M Squared argued that the plain terms "regulate" and "requirement" could not be interpreted to mean "prohibit" in the regulatory context. It posited that if our Legislature intended to delegate the power to prohibit, it would have included that specific language, as found in similar statutes.[1] M Squared argued that without specific language in section 10-8-41.6 allowing municipalities to "prohibit" RTSBs, the

---

1. M Squared compares section 10-8-41.6 of the Utah Code to section 10-8-42, wherein our Legislature expressly allowed municipalities to "prohibit," among other things, the possession, manufacture, sale, storage, importation, transportation, distribution, or service of intoxicating liquors. *See* Utah Code Ann. § 10-8-42 (LexisNexis 2022).

Ordinance was inconsistent with Utah law and was therefore invalid.

¶5     The City argued that our Legislature's delegation of the state's licensing power to municipalities included an express provision that a municipality was not required to issue an RTSB license. *See* Utah Code Ann. § 10-8-41.6(6)(a)(i) (LexisNexis Supp. 2023) (stating that "[n]othing in this section . . . requires a municipality to issue a retail tobacco specialty business license"). The City emphasized that M Squared's argument was "contaminated by its refusal to confront" this provision.

¶6     After a hearing, the district court affirmed the AHO and memorialized its ruling in a written decision.[2] The court concluded that the language of section 10-8-41.6 was unambiguous and held that the Ordinance was "a lawful exercise of the City's authority." The court concluded that the AHO's decision was based on a reasonable interpretation and "was not arbitrary, capricious, or illegal."

¶7     M Squared moved for a new trial pursuant to rule 59 of the Utah Rules of Civil Procedure, arguing that the court's decision was "based on an error of law." *See* Utah R. Civ. P. 59(a)(7). M Squared asserted that the City did not have "unfettered authority to prohibit/ban businesses when the Utah Legislature has only afforded the City power to regulate businesses via business licensing." The City contended that M Squared remained "steadfast in its refusal to confront the statutory text and basic rules of interpretation." The court again concluded that the language of the statute is unambiguous and "[w]hen the plain language is clear, the plain language reigns." The court denied the motion for a new trial, and M Squared appealed.

---

2. The transcript of the hearing was not provided, although the transcript of the district court's ruling from the bench was made part of the appellate record.

ISSUE AND STANDARD OF REVIEW

¶8     M Squared challenges the district court's interpretation of section 10-8-41.6 of the Utah Code, arguing that the plain language indicates that a municipality has the power to regulate their licensure but not to prohibit the operation of RTSBs. "We review questions of statutory interpretation for correctness, affording no deference to the district court's legal conclusions." *State v. Thurman*, 2022 UT 16, ¶ 13, 508 P.3d 128 (quotation simplified).

ANALYSIS

¶9     "When interpreting statutory language, our primary task is to give effect to the intent of the legislature," and "we determine the statute's meaning by first looking to the statute's plain language." *Mallory v. Brigham Young Univ.*, 2014 UT 27, ¶ 13, 332 P.3d 922 (quotation simplified). In so doing, "we assume the legislature used each term advisedly and in accordance with its ordinary meaning." *Id.* (quotation simplified). But we "do not view individual words and subsections in isolation." *Penunuri v. Sundance Partners, Ltd.*, 2013 UT 22, ¶ 15, 301 P.3d 984. Instead, we recognize "that each part or section [must] be construed in connection with every other part or section so as to produce a harmonious whole." *Id.* (quotation simplified).

¶10     Section 10-8-41.6 comprises seven subsections, of which subsections (2), (3)(a), and (6)(a) are of most relevance to the case at hand. Subsection (2) specifies that "[t]he regulation of a retail tobacco specialty business is an exercise of the police powers of the state by the state or by delegation of the state's police powers to other governmental entities." Utah Code Ann. § 10-8-41.6(2) (LexisNexis Supp. 2023). Subsection (3) delegates the regulation of RTSBs to local municipalities by specifically stating that "[a] person may not operate a retail tobacco specialty business in a municipality unless the person obtains a license from the

municipality in which the retail tobacco specialty business is located." *Id.* § 10-8-41.6(3). And, even though licensure is wholly delegated to the municipality, our Legislature imposes a number of minimum requirements on a municipality's grant of licensure, such as certain proximity limits and the requirements for a health permit and a state tax license. *See id.* § 10-8-41.6(4), (5). Subsection (6)(a), however, expressly directs, "Nothing in this section: (i) requires a municipality to issue a retail tobacco specialty business license; or (ii) prohibits a municipality from adopting more restrictive requirements on a person seeking a license or renewal of a license to conduct business as a retail tobacco specialty business." *Id.* § 10-8-41.6(6)(a). We must interpret these subsections with the intent "to produce a harmonious whole." *Penunuri*, 2013 UT 22, ¶ 15 (quotation simplified).

¶11     First, as M Squared recognizes, subsection (2) authorizes the state to delegate the power to regulate RTSBs to "other governmental entities." Utah Code Ann. § 10-8-41.6(2). Next, we note that subsection (3) provides that a person "may not" operate an RTSB without a license from the local licensing jurisdiction. Furthermore, in section 68-3-12 of the Utah Code, our Legislature provides its rules of construction and states that its use of the phrase "'May not' means that an action is not authorized and is prohibited." *Id.* § 68-3-12(1)(h) (LexisNexis 2021). Thus, we readily conclude that our Legislature intentionally prohibited an RTSB from operating without an RTSB license from the responsible municipality. Finally, subsection (6)(a)(i) states that "[n]othing in this section . . . requires a municipality to issue a retail tobacco specialty business license." *Id.* § 10-8-41.6(a)(i).

¶12     Interpreting section 10-8-41.6 with the intention of producing a "harmonious whole," our Legislature's chosen language plainly indicates that a person's operation of an RTSB "is not authorized and is prohibited," *id.* § 68-3-12(1)(h), "unless the person obtains a license from the municipality in which the retail tobacco specialty business is located," *id.* § 10-8-41.6(3)(a).

Further, subsection (6)(a) plainly states that nothing in section 10-8-41.6 "requires a municipality to issue" an RTSB license. Thus, based on the plain language of the statute, it is obvious that a municipality may, in its discretion, prohibit the operation of RTSBs by choosing to deny all applications for an RTSB license within its licensing jurisdiction. And this is what the City has chosen to do.

CONCLUSION

¶13    We conclude that the language of section 10-8-41.6 of the Utah Code plainly delegates the power to license RTSBs to municipalities. It further prohibits a person from operating an RTSB without a license, expressly stating that nothing in that section requires a municipality to grant licensure to an RTSB. Therefore, we conclude that the Ordinance's prohibition of RTSBs does not exceed the statutory authority delegated to the City by our Legislature.

¶14    Affirmed.

_____